# UNITED STATES DISTRICT COURT FOR
# THE DISTRICT OF COLUMBIA

UNITED STATES POSTAL SERVICE,
475 L'ENFANT PLAZA SW ROOM 6001
WASHINGTON DC 20260-1101

    Plaintiff,

v.                                                              Case No.:19-3685

NATIONAL ASSOCIATION OF LETTER
CARRIERS, AFL-CIO
100 Indiana Ave NW Ste 510,
Washington, DC 20001

    Defendant.

## COMPLAINT

1.    This action is brought pursuant to Section 1208(b) of the Postal Reorganization Act, 39 U.S.C. § 101, *et seq.*, by the United States Postal Service ("USPS") against the National Association of Letter Carriers, AFL-CIO ("NALC") to vacate an arbitration award (the "Award") issued by Arbitrator Lawrence Roberts on August 30, 2019, requiring the USPS to pay employees and the NALC steward damages for failure to comply with previously settled regional arbitration agreements. The damages ordered in the Award can only be characterized as punitive, despite no such remedy being explicitly available under the law of sovereign immunity or under the terms of the controlling collective bargaining agreement. The Award conflicts with USPS' sovereign immunity, is contrary to longstanding labor and contract law principles, and represents a departure from Arbitrator Roberts' predetermined arbitral powers.

## JURISDICTION AND VENUE

2. This Court has jurisdiction pursuant to 39 U.S.C. §§ 409(a) and 1208, 28 U.S.C §§ 1331, 1339, 2201 and 2202.

3. Venue is appropriate pursuant to 39 U.S.C. § 1208(d) and 28 U.S.C. § 1391(b).

## PARTIES

4. Plaintiff USPS is an independent establishment of the Executive Branch of the United States Government. *See* 39 U.S.C. § 201. USPS Headquarters are located at 475 L'Enfant Plaza, SW, Washington, DC 20260.

5. Defendant NALC is a labor organization with its headquarters at 100 Indiana Avenue, NW, Washington, DC 20001.

## LEGAL BACKGROUND

6. The Postal Service is an independent establishment of the Executive Branch of the United States Government, created pursuant to the Postal Reorganization Act ("PRA"), 39 U.S.C. § 101 *et seq.*, as the successor to the former Post Office Department.

7. Congress has not waived the USPS sovereign immunity vis-à-vis punitive damages.

8. At all times relevant to these proceedings, the Plaintiff USPS and Defendant NALC have been parties to collective bargaining agreements providing the terms and conditions of employment for the bargaining unit employees represented by Defendant NALC. Bargaining unit employees work at various postal facilities throughout the United States. The dispute underlying this Complaint arose under the parties' collective bargaining agreement, in effect May 21, 2016 to present (the "Agreement").

9. The Agreement contains a comprehensive grievance-arbitration procedure for the resolution of any "dispute, difference, disagreement or complaint between the parties related to wages … and conditions of employment." Agreement at Art. 15.1. This system includes a multistep grievance process, concluding in final and binding arbitration before a neutral arbitrator.

10. Article 15.4.A.6 of the Agreement provides, in pertinent part:

> All decisions of an arbitrator will be final and binding. All decisions of arbitrators shall be limited to the terms and provisions of this Agreement, and in no event may the terms of and provisions of this Agreement be altered, amended, or modified by an arbitrator.

11. Pursuant to 39 U.S.C § 1208(b), "[s]uits for violation of contracts between the Postal Service and a labor organization representing Postal Service employees…may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy."

## FACTUAL BACKGROUND

12. On June 6, 2018, the Dispute Resolution Team ("DRT"), comprised of both NALC and USPS representatives, issued a decision for a Step – B grievance (hereinafter, "Initial Decision"), finding that the management in the Kingsport Post Office violated Postal Service practice by altering "clock rings," the means by which work timekeeping is recorded.

13. The DRT ordered that management at that location be immediately retrained in the use of the "Time and Attendance Collection System" ("TACS").[1] The managers in question, however, did not undergo retraining as directed.

---

[1] The Plaintiff does not dispute that certain members of management impermissibly altered clock rings. The time records of any employee that had been incorrectly recorded were restored prior to the Roberts arbitration.

14.     On August 7, 2018, the local Formal Step – A parties met to discuss management's noncompliance with the Initial Decision.

15.      On August 14, 2018, the parties issued a Formal Step – A Resolution ("Formal Step – A Settlement"), wherein the parties agreed that the abovementioned managers would complete their training no later than August 31, 2018, and would provide the Union certification of completion. Again, however, the managers did not complete training by August 31, and necessarily did not provide the certificates.

16.     On November 27, 2018, the DRT issued a decision for Grievance 18-FCMK2-18, which found that management did not comply with the Formal Step – A Settlement, as well as the Initial Decision, by failing to provide the Union with documentation of completed training. The DRT directed that Management was to provide proof of training within seven days of issuance of the decision. The decisions further provided that "Management of the Kingsport Installation is issued an additional cease and desist regarding failure to provide information requested . . . ." However, management failed to provide the certificates as directed.

17.     On February 8, 2019, the DRT issued yet another decision, this time for Grievance 18-FCMK3-18, stemming from management's noncompliance with the November 27 decision. The February 8 decision provided, in relevant part, that the DRT was forced to declare an impasse in part. The DRT agreed that management violated Article 15, Section 3A, and Article 18, via Postal Service Policy Letter 1517 of the National Agreement by failing to comply with the November 27 settlement. The DRT could not agree, however, on an appropriate contractual remedy.

18.     On June 14, 2019, the parties appeared before Arbitrator Roberts to grieve the unresolved questions of the February 8 DRT decision.  The only issue before Arbitrator Roberts

related to the November 27 decision. The initial Step – B and the Formal Step – A grievances had already been resolved by their respective, corresponding settlements.

19. Arbitrator Roberts issued the Award on August 30, 2019. In it, Arbitrator Roberts made no effort to conceal his frustration and contempt for management's record of inaction.[2]

20. The Award directed USPS to comply with all prior related settlement terms and to pay a total of $230,640, representing payments to both individual carriers and to the NALC shop steward for the Postal Service's repeated failure to comply with the prior settlements.

21. The damages imposed are unrelated to any actual loss, are not based on contract provisions, and can only be characterized as punitive.

22. The award of punitive damages conflicts with the clear, dominant public policy of sovereign immunity from such damages.

23. The well-established general rule of law is that punitive or exemplary damages are not available as a remedy for a breach of contract.

24. Punitive remedies are foreign to the labor relations landscape and therefore disfavored in the context of suits alleging a breach of the collective bargaining agreement.

25. Because penalties and punitive damages are rarely available in contract actions, and particularly disfavored against the backdrop of a collective bargaining agreement, an arbitrator's power to award such damages must be explicitly set forth in contractual language, and consent to such a severe remedy cannot be implied.

---

[2] As one example given from the Award: "[w]ith respect to the various arguments made by the Agency regarding punitive awards, one significant point was clearly overlooked, that of the pre-existing cease and desist order. It was the local Parties, not another arbitrator or third party, that issued the cease and desist order relevant to this particular case. Cease and desist means cease and desist. It means to stop, end, abstain and discontinue, period. It's straightforward and should not require interpretation." *Award* at 18-19.

26. The controlling Agreement does not explicitly, or implicitly, provide for punitive damages in the event of a breach.

27. Although the parties agreed through the Agreement to abide by the decision of the Arbitrator to disputes arising under the Agreement, the Award – and punitive damages directed therein – manifestly disregards and fails to draw its essence from the Agreement. In issuing such an award, Arbitrator Roberts necessarily exceeded the contractual scope of his authority.

28. In rendering the Award, Arbitrator Roberts ignored the predetermined, defined, available remedies for a breach of the Agreement, and crafted, instead, a remedy to satisfy his own brand of industrial justice.

29. The terms of the Agreement were, and remain, binding upon USPS and NALC, and Arbitrator Roberts acted without authority when he disregarded the terms of the Agreement as had been previously agreed upon by the parties.

30. Additionally, USPS is an independent establishment of the Executive Branch of the United States Government, and, like other federal instrumentalities, enjoys federal sovereign immunity from suits and damages unless waived.

31. Although the PRA generally waives the immunity of USPS by giving it the power to "sue and be sued in its official name," the waiver is not unlimited.

32. Courts have found the Postal Service to be immune from punitive damages under a variety of federal statutes, including federal civil rights laws, the Federal Tort Claims Act (FTCA), and the Tucker Act (providing jurisdiction in the Federal Court of Claims over actions for alleged breaches of express or implied contracts by the United States).

33. Had Congress intended to subject the Postal Service to virtually unheard-of, and potentially catastrophic, damage awards for breaches of labor contracts it would have so provided.

34. In issuing the Award, Arbitrator Roberts effectively entered a judgment counter to this well-established public policy.

## **COUNT I**

35. The Plaintiff reincorporates herein paragraphs 1-34 of this Complaint.

36. The Agreement is binding on USPS and NALC.

37. The Award granting the Grievance and directing the Plaintiff to pay punitive damages is not enforceable because it conflicts with the USPS' sovereign immunity, because it fails to draw its essence from the controlling CBA, and because Arbitrator Roberts has ignored the terms of the agreement and instead dispensed his own brand of industrial justice.

38. By imposing a remedy not provided for under the terms of the Agreement, the Award stands in violation of the Agreement, and Article 15.4.A.6 in particular, as it alters and amends the terms thereof.

39. Because the Opinion and the Award does not draw its essence from the CBA and represents the fashioning of Arbitrator Roberts' own brand of industrial justice, it should be vacated and set aside.

## **COUNT II**

40. The Plaintiff herein incorporates paragraphs 1-39 of this Complaint.

41. The Award directing the Plaintiff to pay damages to the Defendant is not enforceable as it is against public policy for the reasons set forth above.

42. Because the Award is counter to public policy, it should be vacated and set aside.

**PRAYER FOR RELIEF**

WHEREFORE, the U.S. Postal Service respectfully requests that the Court enter judgment vacating, setting aside, and declaring null and void the August 30, 2019 Opinion and Award of Arbitrator Roberts vis-à-vis punitive damages, along with any and all other relief the Court deems necessary and proper.

Respectfully Submitted,

JESSIE K. LIU
D.C. BAR # 472845
United States Attorney
for the District of Columbia

DANIEL F. VAN HORN
D.C. BAR # 924092
Civil Chief

By: /s/
BENTON G. PETERSON, BAR # 1029849
Assistant United States Attorney
U.S. Attorney's Office
555 4th Street, N.W. - Civil Division
Washington, D.C. 20530
(202) 252-2534

OF COUNSEL:

ERIN E. LYNCH
Chief Counsel, Labor Law
Office of the General Counsel
United States Postal Service

LUCY R. COOLIDGE
Attorney, Labor Law
United States Postal Service

LAUREN E. WEAVER
Attorney, Labor Law
United States Postal Service