# UNITED STATES DISTRICT COURT FOR
# THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES POSTAL SERVICE, | ) |
| Plaintiff, | ) |
| v. | ) Case No.:19-3685 |
| NATIONAL ASSOCIATION OF LETTER CARRIERS, AFL-CIO | ) |
| Defendant. | ) |

## UNITED STATES POSTAL SERVICE'S MOTION TO VACATE ARBITRATION AWARD

The United States Postal Service ("USPS"), by counsel, hereby moves to vacate the arbitration award (the "Award") issued by Arbitrator Lawrence Roberts on August 30, 2019, in the Matter of Arbitration between the United States Postal Service and the National Association of Letter Carriers, AFL-CIO ("NALC" or "Union").  The grounds for this motion are provided for in USPS's Statement of Points of Authorities attached hereto and incorporated herein by reference.  The Award is attached to USPS's supporting memorandum and referenced herein.

        Respectfully Submitted,

        JESSIE K. LIU
        D.C. BAR # 472845
        United States Attorney
        for the District of Columbia

        DANIEL F. VAN HORN
        D.C. BAR # 924092
        Civil Chief

By:    /s/
        BENTON G. PETERSON, BAR # 1029849
        Assistant United States Attorney
        U.S. Attorney's Office
        555 4th Street, N.W. - Civil Division
        Washington, D.C. 20530
        (202) 252-2534

# UNITED STATES DISTRICT COURT FOR
# THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES POSTAL SERVICE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.:19-3685 |
| | ) |
| NATIONAL ASSOCIATION OF LETTER | ) |
| CARRIERS, AFL-CIO | ) |
| | ) |
| Defendant. | ) |
| | ) |

## UNITED STATES POSTAL SERVICES'S
## STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO VACATE ARBITRATION AWARD

Plaintiff, the United States Postal Service ("USPS"), by counsel, and pursuant to Section 1208(b) of the Postal Reorganization Act, 39 U.S.C. § 101, *et seq.*, submits the following statement of points and authorities in support of its motion to vacate the August 30, 2019 arbitration award (the "Award") issued by Arbitrator Lawrence Roberts.

### INTRODUCTION

USPS seeks to vacate an arbitration award issued on August 30, 2019. The Award was rendered following a June 14, 2019, hearing at a postal facility in Kingsport, Tennessee. USPS received the award on September 11, 2019. Through the Award, Arbitrator Roberts exceeded his authority and powers by ordering that USPS pay certain damages to the National Association of Letter Carriers, AFL-CIO ("NALC or "Union") and a large group of its members.

As explained in greater detail below, the damages ordered in the Award can only be characterized as punitive, despite no such remedy being available under the law of sovereign immunity or under the terms of the controlling collective bargaining agreement.  The evidence presented at the June 2019 hearing clearly demonstrated that while USPS fell short in complying with an earlier settlement agreement, its actions did not rise to the level of "willful" or "extraordinary" such that issuance of punitive damages would be appropriate, even if the Postal Service were not immune to such damages.  Management's noncompliance was the result of poor planning and logistical difficulties, not evidence of wanton and willful disregard for grievance awards.  Further, Congress has not waived the sovereign immunity protections the Postal Service has as a federal agency, and therefore should not be subject to punitive damages.

The Award conflicts with USPS' sovereign immunity, is contrary to longstanding labor and contract law principles, and represents a departure from Arbitrator Roberts' arbitral powers.  For the reasons set forth herein, Arbitrator Roberts circumvented the predetermined, defined, available remedies for breach of an agreement, and instead crafted a remedy to satisfy his own brand of industrial justice.

## STATEMENT OF MATERIAL FACTS

**I.   Underlying Collective Bargaining Agreement**

At all times relevant to these proceedings, the Plaintiff USPS and Defendant NALC have been parties to a collective bargaining agreement providing the terms and conditions of employment for the bargaining unit employees represented by NALC.  Bargaining unit employees work at various postal facilities throughout the United States.  The dispute underlying this motion arose under the parties' collective bargaining agreement, in effect May 21, 2016, to present (the "Agreement").

The Agreement contains a comprehensive grievance-arbitration procedure for the resolution of any "dispute, difference, disagreement or complaint between the parties related to wages … and conditions of employment." Agreement at Art. 15.1. This system includes a multistep grievance process, concluding in final and binding arbitration before a neutral arbitrator. Article 15.4.A.6 of the Agreement provides, in pertinent part:

> All decisions of an arbitrator will be final and binding. All decisions of arbitrators shall be limited to the terms and provisions of this Agreement, and in no event may the terms of and provisions of this Agreement be altered, amended, or modified by an arbitrator.

## II. Initial Agreement Violation and Resolution

On June 6, 2018, the Dispute Resolution Team ("DRT"), comprised of both NALC and USPS representatives, issued a decision for a Step – B Grievance 11-MDMK4-18 (hereinafter, "Initial Decision"), finding that the management in the Kingsport Post Office violated Postal Service practice by altering "clock rings," the means by which work timekeeping is recorded.[1] USPS Case No. C16N-4C-C 18221124.

The DRT ordered that management at that location be immediately retrained in the use of the "Time and Attendance Collection System" ("TACS"). Additionally, the time records of any employee that had been incorrectly recorded were restored. Tr. 66-67.

However, despite the directives of the Initial Decision, the managers in question did not undergo retraining as directed.

## III. Subsequent Grievance Procedures Stemming from Initial Decision

When management failed to comply with the training directives of the Initial Decision, a chain of grievance processes was set into motion. On August 7, 2018, the local Formal Step – A

---

[1] The Plaintiff does not dispute that certain members of management impermissibly altered clock rings.

3

parties met to discuss management's noncompliance.  On August 14, 2018, the parties issued a Formal Step – A Resolution for Grievance 18-FCMK1-18 ("Formal Step – A Settlement"), wherein the parties agreed that the abovementioned managers would complete their training no later than August 31, 2018, and would provide the Union certification of completion. Again, however, the managers did not complete training by August 31, and necessarily did not provide the certificates. (Ex. A)

On November 27, 2018, the DRT issued a decision for Grievance 18-FCMK2-18, which found that management did not comply with the Formal Step – A Settlement, as well as the Initial Decision, by failing to provide the Union with documentation of completed training. USPS Case No. C16M-4C-C 19019432. The DRT directed that management was to provide proof of training within seven days of issuance of the decision. The decision further provided that "Management of the Kingsport Installation is issued an additional cease and desist regarding failure to provide information requested . . . ." However, management failed to provide the certificates as directed. (Ex. B)

Finally, on February 8, 2019, the DRT issued yet another decision, this time for Grievance 18-FCMK3-18, stemming from management's noncompliance with the November 27 decision. USPS Case No. C16N-4C-C 19079250. The February 8 decision provided, in relevant part, that the DRT was forced to declare an impasse in part. The DRT agreed that management violated Article 15, Section 3A, and Article 18, via Postal Service Policy Letter 1517 of the National Agreement by failing to comply with the November 27 settlement. The DRT could not agree, however, on an appropriate contractual remedy. (Ex. C)

**IV.    Hearing and Issuance of the Award**

On June 14, 2019, the parties appeared before Arbitrator Roberts to present the unresolved questions of the February 8 DRT decision. Representing the Union was Corey Walton, Local Business Agent and Arbitration Advocate, and Shawn Stout, Union Steward. Appearing for the Postal Service was Derek Truman, Labor Advocate, and Eric Conklin, Labor Relations Specialist for the Eastern Area. Testimony was heard from Mr. Stout and Ms. Susie Whittington, postmaster at the Kingsport, Tennessee, installation from which the initial violations arose. (Ex. D)

**A.    Testimony at the hearing showed that USPS failure to timely train its managers on proper timekeeping was not willful.**

Management at the Kingsport installation violated timekeeping procedures. Those errors were subsequently corrected, and the affected employees made whole. In an attempt to retrain management to prevent these mistakes from happening again, USPS committed itself to certain obligations which – as it was later discovered – were logistically impossible to keep.

At the hearing, Postmaster Whittington testified that upon being directed to retrain certain managers, she made repeated, good-faith efforts to get all persons into the training courses that they needed. Tr. 71. However, she also testified that "[t]he classes are few and far between" and that with approximately 130 employees within the Kingsport installation, it would be logistically impossible to have all managers out for training at the same time. Tr. 72. In her own words from the hearing, "[t]hese supervisors have specific responsibilities, and they don't have backups if they're not here." Tr. 73. Additionally, her efforts were further frustrated when she repeatedly had to request certificates of training completion, which further delayed compliance. Tr. 78.

Postmaster Whittington readily conceded that the Kingsport office was her responsibility, that she had been aware of the underlying grievances and directives, that it was her responsibility

5

to ensure that the managers were retrained, and that USPS was in compliance. Tr. 73. Most importantly, however, she testified that it was never her intention to defy the orders of the DRT, and that there was no malice or ill will on her part. Id. Rather, her testimony painted a clear picture of a postmaster and manager struggling to balance all duties and responsibilities, resulting in shortcomings that, while unfortunate, were unintentional. Tr. 75-76. Although compliance with the grievance settlements and decisions may have fallen on Postmaster Whittington's shoulders, she had not been a part of the grievance process or the crafting of these decisions. Tr. 80. There is no evidence that anyone from the DRT had specifically asked Ms. Whittington if training for all managers could be completed in a timely fashion, before imposing on her the August 31 deadline. *Id*. As a result, the Postal Service, its representatives, and its managers, unknowingly and unintentionally set themselves up for failure from the outset. The persons involved, and USPS as a whole, did not, however, act with a malicious intent or with wanton and willful disregard for the grievance process or decisions.

> B. **Arbitrator Roberts his focused his decision on USPS's failure to comply as opposed to the limited issue before him.**

In spite of the candid and credible testimony of Postmaster Whittington – someone who had been directly involved with the training issue, and therefore best positioned to speak on the issue – Arbitrator Roberts focused almost exclusively on the fact that it took USPS almost a year to fully and finally comply with the directives of the Initial Decision. *See* Tr. 81, 84. He further opined that it appeared USPS was still having timekeeping issues, despite that question not being a part of his purview for this case. Tr. 84. The following exchange between Arbitrator Roberts and Postmaster Whittington reveals Arbitrator Roberts' frustration with the Postal Service:

> Arbitrator Roberts: You had two cease-and-desist orders. It's in this file. We still have a problem. I don't know – I've looked, and I don't even know that the problem is. There was testimony that it continues to exist.

6

> Going back to 66544,[2] it is very serious.
> Witness: Absolutely.
> Arbitrator Roberts: That's falsification.
> Witness: Absolutely.
> Arbitrator Roberts: That's why people lose their jobs.
> Witness: Yes, sir.
> Arbitrator Roberts: People can go to jail based on that particular section. Are you aware of that?
> Witness: Yes, sir.
> Arbitrator Roberts: So it's very serious. It needs to be resolved somehow. I don't know what the answer is but just thought I would ask for your viewpoint on what's happening. Again, that has nothing to do, because that's not argument or anything.

Tr. 84-85.

The focus of the Roberts hearing *should* have been on an appropriate remedy for the Postal Service's failure to comply with the November 27 settlement *only*. Instead, however, Arbitrator Roberts repeatedly drew his attention – and ire – to each prior grievance, as well as his suspicion that timekeeping violations were still occurring. As frustrating as the history of this case may have been, it was not the responsibility of Arbitrator Roberts to re-litigate each grievance that had come before.

### V. Arbitrator Roberts Ignored Clear Limitations on his Arbitral Powers in Favor of Individualized Industrial Justice.

On August 30, 2019, Arbitrator Roberts issued the Award, finding that the Postal Service repeatedly failed to comply with previous grievance settlements and/or decisions, specifically settlements requiring the Postal Service to train supervisors on timekeeping procedures and to provide evidence to the Union that the training had been completed. (Ex. E)

In the Award, Arbitrator Roberts ordered that the Postal Service "immediately cease and desist from future violations of Article 15, Section 3.A and Postal Service Policy Letter (M-

---

[2] "66544" refers to Employee and Labor Relations Manual (ELM) Section 66544, regarding falsification of records.

01517) via Article 19 of the National Agreement in the Kingsport Installation." *Roberts Award*, 20-21. He further ordered monetary payments totaling $230,640 be made to both individual carriers and to the Union for the Postal Service's repeated failings to comply with the prior settlements. *Id*. at 20-22. In rendering these damages, Arbitrator Roberts stepped far outside his limited arbitral powers, and instead fashioned an *ad hoc* remedy that satisfied his own clear frustration and contempt for the actions of the Postal Service.

The damages imposed are unrelated to any actual loss, are not based on contract provisions, and can only be characterized as punitive. The award of punitive damages conflicts with the clear, dominant public policy of sovereign immunity from such damages.

Further, the well-established general rule of law is that punitive or exemplary damages are not available as a remedy for a breach of contract. See Restatement (Second) of Contracts §355, comment (a) (Am. Law Inst. 1981). Punitive remedies are foreign to the labor relations landscape and therefore disfavored in the context of suits alleging a breach of the collective bargaining agreement.

Because penalties and punitive damages are rarely available in contract actions, and particularly disfavored against the backdrop of a collective bargaining agreement, an arbitrator's power to award such damages must be explicitly set forth in contractual language, and consent to such a severe remedy cannot be implied. The controlling Agreement does not explicitly, or implicitly, provide for punitive damages in the event of a breach. As such, the Award is not grounded in contract interpretation.

The Award manifestly disregards and fails to draw its essence from the parties' collective bargaining agreement. The Award lacks any citation or even reference to a contractual or statutory authority for basis of imposing punitive damages. Accordingly, Arbitrator Roberts

necessarily exceeded the contractual scope of his authority.   The terms of the Agreement were, and remain, binding upon USPS and NALC, and Arbitrator Roberts acted without authority when he fashioned his Award.

Additionally, the Postal Service is an independent establishment of the Executive Branch of the United States Government, and, like other federal instrumentalities, enjoys federal sovereign immunity from suits and damages unless waived.  Although the Postal Reorganization Act ("PRA"), 39 U.S.C. §101 *et seq*., generally waives the immunity of USPS by giving it the power to "sue and be sued in its official name," the waiver is not unlimited. Courts have found the Postal Service to be immune from punitive damages under a variety of federal statutes, including federal civil rights laws, the Federal Tort Claims Act (FTCA), and the Tucker Act (providing jurisdiction in the Federal Court of Claims over actions for alleged breaches of express or implied contracts by the United States).

Had Congress intended to subject the Postal Service to virtually unheard of, and potentially catastrophic damage awards, for breaches of labor contracts it would have so provided.  In issuing the Award, Arbitrator Roberts effectively entered a judgment counter to this well-established public policy.

## ARGUMENT

The award, issued on August 30, 2019, runs counter to well-articulated contract and labor law as it issues punitive damages against the Postal Service in circumstances under which such damages are normally prohibited. Arbitrator Roberts's decision stands incongruent with the general rule of law that punitive or exemplary damages are not available as a remedy in a contract breach, and are particularly disfavored under the context of a breach of a collective bargaining agreement. Various courts have vacated arbitration awards where, as here, the

collective bargaining agreement did not explicitly provide for punitive awards, and/or management did not engage in wanton or willful misconduct. In the instant case, there is neither an express contract allowance for such damages, nor proof of wanton or willful misconduct. Finally, the basic principles of sovereign immunity reject punitive damages against the Postal Service as an independent establishment of the Executive Branch.

## I. Arbitrator Roberts Exceeded His Powers Under the Agreement

### A. Standard of Review

District of Columbia Code § 16-4423 states that upon motion to the court by a party to an arbitration proceeding, the court shall vacate an award made in the arbitration proceeding if an arbitrator exceeded the arbitrator's powers. D.C. Code § 16-4423(a)(4).[3] A motion under this section shall be filed within 90 days after the movant receives notice of the award pursuant to § 16-4419. 'The standard for judicial review of arbitration awards in the postal context is the same as the standard articulated by the Supreme Court for judicial review of labor arbitration awards under § 301(a) of the [LMRA]." *Nat'l. Postal Mail Handlers Union v. Am. Postal Workers' Union*, 589 F.3d 437, 440-41 (D.C. Cir. 2009). That standard has been characterized by the United States Court of Appeals for the District of Columbia Circuit as "extraordinarily deferential[.]" and as a result, judicial review of arbitral decisions is "extremely limited." *Id* at 442.

Judicial review of arbitral decisions resolving labor disputes is limited. As articulated by the Supreme Court, so long as the arbitrator is arguably applying the collective bargaining

---

[3] The D.C. Circuit "appl[ies] the limitation period that would apply to the state law claim that is 'most closely analogous' to the federal claim in suit," including in § 301 suits. *Cephas v. MVM, Inc.*, 520 F.3d 480, 484-85 (D.C. Cir. 2008) *see also*; *See Preeminent Protective Servs. v. SEIU*, 330 F. Supp. 3d 505, 510 (D.D.C. 2018); *id.* at 510 n.3; *Local 689, ATU v. WMATA*, 249 F. Supp. 3d 427, 437 (D.D.C. 2017).

agreement, the award will not be overturned. *Eastern Associated Coal Corp. v. Mine Workers*, 531 U.S. 57, 62 (2000).  Indeed, "[c]ourts are not authorized to review the arbitrator's decision on the merits despite allegations that the decision rests on factual errors or misinterprets the parties' agreement." *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001); *see also U.S. Postal Serv. v. Am. Postal Workers Union*, 553 F.3d 686, 693 & 695 (D.C. Cir. 2009) (reversing district court's vacatur of award because even though the award was "questionable" and "arguably dubious in its judgment on the merits," there was no basis for vacatur).

Although courts accord significant deference to arbitral decisions, the Supreme Court has repeatedly made clear that a court may not enforce an award that applies a collective bargaining agreement in a manner that reflects the arbitrator's "own brand of industrial justice" rather than the remedies set forth in the collective bargaining agreement.  As articulated by the Supreme Court in *United Paperworkers lnt'l Union, AFL-CIO v. Misco,* "the arbitrator's award . . . must draw its essence from the contract and cannot simply reflect the arbitrator's own notions of industrial justice." 484 U.S. 29, 38 (1987).

### B. Arbitrator Roberts Exceeded His Authority and Powers Under Section 15 of the Agreement

Article 15.4.A.6 of the Agreement provides, in pertinent part:

All decisions of an arbitrator will be final and binding.  All decisions of arbitrators shall be limited to the terms and provisions of this Agreement, and in no event may the terms of and provisions of this Agreement be altered, amended, or modified by an arbitrator.

Nothing in the language in the Agreement authorizes punitive damages, and Arbitrator Roberts did not purport to justify the award based upon his interpretation of the contract. Rather, he clearly fashioned an extra contractual remedy to apply his own "personal brand of industrial justice."  Because Arbitrator Roberts failed to identify the authority within the Agreement to

11

apply a penalty, he exceeded his powers and authority under the Agreement. *See Coast Trading Co. Inc. v. Pacific Molasses Co.*, 681 F.2d 1195, 1198 (9th Cir. 1982) (arbitration award vacated as being contrary to the remedies provided in the contract and as beyond the authority of the arbitrator); *Amanda Bent Bolt Co. v. International Union*, et al., 466 F.2d 1277 (6th Cir. 1971) (arbitration award vacated because arbitrator award was contrary to the terms of the parties' arbitration agreement). Consequentially, the Award should be set aside.

      C. **Punitive Damages are Generally Not Available as a Remedy for a Contract Breach.**

As comment (a) to the Restatement (Second) of Contracts § 355 (Am. Law Inst. 1981) makes clear, punitive damages are not recoverable in a contract action, and such an award is inappropriate even in the context of an aggravated breach:

> The purposes of awarding contract damages is to compensate the injured party . . . . For this reason, courts in contract cases do not award damages to punish the party in breach or to serve as an example to others unless the conduct constituting the breach is also a tort for which punitive damages are recoverable. Courts are sometimes urged to award punitive damages when, after a particularly aggravated breach or the injured party has difficulty in proving all of the loss that he has suffered. In such cases the willfulness may be taken into account in applying the requirement that damages be proved with reasonable certainty (Comment (a) to § 352); but the purpose of awarding damages is still compensation and not punishment, and punitive damages are not appropriate.

Moreover, because penalties and punitive damages are rarely available in contract actions, an arbitrator's power to award such damages must be explicitly set forth in contractual language and consent to such a severe remedy cannot be implied. *Barnes v. Gorman*, 536 U.S. 181, 187-88 (2002) (noting that "punitive damages, unlike compensatory damages and injunction, are generally not available for breach of contract," and refusing to imply a right to such damages in the absence of express statutory language authorizing them). In the instant case, the Postal Service has not consented to the imposition of punitive remedies for a breach of contract. Consequently, the award of such a remedy would be contrary to settled law, the

reasonable expectations of the parties, and would exceed the powers vested in the arbitrator by the Agreement.

### D. Principles of Sovereign Immunity Bar Punitive Damage Awards Against the Postal Service

Defendant is unaware of any precedent affirming an award of punitive damages against the United States Postal Service, which is an independent establishment of the Executive Branch of the United States Government, created pursuant to the Postal Reorganization Act ("PRA"). 39 U.S.C. § 101 *et seq.* As such, the Postal Service, like other federal instrumentalities, enjoys federal sovereign immunity from suits and damages unless waived. *See Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 484 (2006) ("[T]he Postal Service enjoys federal sovereign immunity absent a waiver.").

Although the PRA "generally waives the immunity of the Postal Service by giving it power to sue and be sued in its official name," that waiver has never been interpreted to extend to an award of punitive damages. *Postal Service v. Flamingo Industries (USA) Ltd.*, 540 U.S. 736, 741 (2004) (quoting 39 U.S.C. § 401). Nor does a "sue and be sued" clause strip an entity of its governmental status, which is significant, because the "absence of immunity does not result in liability if the substantive law in question is not intended to reach the federal entity." *Id*. at 744.

As noted above, the substantive federal common law developed under Section 301 of the Labor Management Relations Act has never recognized punitive damages as a normal incident of suit in an action to enforce a labor contract against a private entity, much less a federal instrumentality such as the Postal Service, whose "goals, obligations and powers" are distinct from those of private enterprises. *Flamingo Industries*, 540 U.S. at 747.

Even if punitive damages were not flatly barred by sovereign immunity, the policy principles underpinning such remedies would not be furthered by an award of punitive damages against the Postal Service. As the Supreme Court has explained, punitive damages, when awarded against governmental entities, do not serve their intended deterrent purpose. "[A]n award of punitive damages against a [government agency] 'punishes' only the taxpayers, who took no part in the commission of the tort." *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 266-76 (1981).  Such awards are "in effect a windfall to a fully compensated plaintiff, and are likely accompanied by an increase in taxes or a reduction of public services for the citizens footing the bill." *Id* at 267.

## CONCLUSION

For the reasons set forth herein, Defendant requests that this Court enter an order vacating the Award and remanding this matter so that the Arbitrator can correct the Award to exclude any reference to extra contractual penalties.

>Respectfully Submitted,
>
>JESSIE K. LIU
>D.C. BAR # 472845
>United States Attorney
>for the District of Columbia
>
>DANIEL F. VAN HORN
>D.C. BAR # 924092
>Civil Chief
>
>By:   /s/_____
>BENTON G. PETERSON, BAR # 1029849
>Assistant United States Attorney
>U.S. Attorney's Office
>555 4th Street, N.W. - Civil Division
>Washington, D.C. 20530
>(202) 252-2534

## CERTIFICATE OF SERVICE

      I hereby certify that true copies of the foregoing were served by Hand Delivered mail this the 10th of December 2019 upon:

    NATIONAL ASSOCIATION OF LETTER CARRIERS, AFL-CIO
    100 Indiana Ave., NW
    Washington, DC 20001

_____
BENTON PETERSON