**UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES POSTAL SERVICE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.:19-3685 (TSC) |
| ) | |
| NATIONAL ASSOCIATION OF LETTER ) | |
| CARRIERS, AFL-CIO ) | |
| ) | |
| Defendant. ) | |
| ) | |

**UNITED STATES POSTAL SERVICE'S OPPOSITION TO MOTION TO CONFIRM
AND REPLY IN SUPPORT OF ITS
MOTION TO VACATE ARBITRATION AWARD**

**INTRODUCTION**

The issue in this case is whether a postal arbitrator exceeded his contractual authority by imposing a nearly quarter million-dollar punitive damages award against an independent establishment of the executive branch of the federal government as a sanction for admitted delays in providing documentation showing that three supervisors had completed agreed-upon remedial training. The answer to that question is decidedly yes.

First, as a branch of the federal government, the Postal Service enjoys sovereign immunity from awards of punitive damages, a principle well-established under existing precedent. Indeed, no court has ever held that the "sue and be sued" provision of the Postal Reorganization Act constitutes a waiver of that immunity, and it would make no sense for Congress to have intended to subject the Postal Service to punitive damages in labor arbitrations while preserving that immunity in other contexts.

1

Second, even if punitive damages were not flatly barred by sovereign immunity, the policy principles underpinning such remedies would not be furthered by an award of punitive damages against the Postal Service. As various courts have explained, punitive damages, when awarded against governmental entities, do not serve their intended deterrent purpose; instead they punish only the tax- or rate-payers, who took no part in the offending conduct, and deplete scarce resources that would otherwise be devoted to the agency's public mission.

Third, even assuming punitive damages were not flatly barred by both law and policy, there would be no basis for sustaining such an award in this case. The nearly universal rule in labor arbitrations is that punitive damages are disfavored, and are typically unavailable in the absence either of express contractual language authorizing them or offending conduct that is truly outrageous and extraordinary.  Neither requirement is present here.  The highly deferential standard of review does not change that fact or empower an arbitrator to dispense his own brand of industrial justice. This Court can and should vacate Arbitrator Robert's decision, which, if allowed to stand, establishes a precedent that is inconsistent with the statutory scheme governing the Postal Service, contrary to public policy, and jeopardizes the Service's ability to carry out its public mission.

## ARGUMENT

### I.   While the Standard of Review is Deferential, it is not Non-Existent; Arbitrators May Not Impose Their Own Brand of Industrial Justice or Contravene Public Policy.

That courts generally accord considerable deference to arbitral decisions is not disputed. *See Madison Hotel v. Hotel & Rest. Emps., Local 25*, 144 F.3d 350, 354 (D.C. Cir. 2006) (noting judicial review of labor arbitral awards is "extremely limited"). However, deference cannot be so great as to render judicial review a hollow exercise. An arbitrator's award "is legitimate only so

long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award." *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597 (1960); *accord Preeminent Protective Servs., Inc. v. Serv. Emps. Int'l Union, Local 32BJ*, 330 F. Supp. 3d 505, 512 (D.D.C. 2018). This is because arbitration is a creature of the parties' agreement – an agreement that, here, reflects decades of careful negotiation and compromise; "[a]n arbitrator is confined to the interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice." *Enterprise Wheel & Car Corp.*, 363 U.S. at 597.

The D.C. Circuit has also recognized that an arbitration award may be set aside as violative of public policy in those narrow circumstances where the award can be said to transgress well defined and dominant laws and legal precedents from clear statutory or case law, rather than general considerations of supposed policy interests. *See Am. Postal Workers Union v. U.S. Postal Serv.*, 789 F.2d 1, 8–9 (D.C. Cir. 1986); *see also Nat'l R. R. Passenger Corp. v. Fraternal Order of Police, Lodge 189*, 855 F.3d 335, 339–43 (D.C. Cir. 2017), *cert. denied* 138 S.Ct. 979 (Feb. 20, 2018); *Nw. Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 808 F.2d 76, 83 (D.C. Cir. 1987); *U.S. Postal Service v. Nat'l Ass'n of Letter Carriers*, 810 F.2d 18, 20 (D.C. Cir. 1986). Under this standard, the award itself must either violate the law or well defined and dominant policy, or compel conduct that runs contrary to such a policy. *Am. Postal Workers Union*, 789 F.2d at 3, 8-9. The D.C. Circuit found this standard to be met where an arbitrator ordered an employee reinstated because an Office of Inspector General investigative agent failed to comply with certain contractual investigatory safeguards; the arbitrator's award was contrary to well established law and public policy dictating that collective bargaining agreements may not

regulate the manner in which Inspectors General conduct investigations. *Nat'l R. R. Passenger Corp.,* 855 F.3d at 339. As discussed more fully below, the principle that the United States remains immune from awards of punitive damages has been the law for decades, and is firmly established in Supreme Court jurisprudence and embodied in numerous statutory provisions exempting the federal government, of which the Postal Service remains a part, from awards of punitive damages. Arbitrator Robert's award violates that public policy.

In the instant case, the arbitrator fashioned a punitive remedy that is barred by sovereign immunity and foreign to the labor relations landscape not based upon his interpretation of the language of the contract, or upon any implied authority premised on "industrial common law," or even upon any precedent justifying a punitive award for a mere breach of a collective bargaining agreement, but instead upon his own indignation and perceived authority to protect the "sanctity" of a voluntary grievance settlement. *See* Docket Entry #14-18 at 20. Where the arbitrator's words "reveal that he has gone beyond interpreting and applying the parties' agreement," and is instead dispensing his own brand of industrial justice, the award cannot be said to draw its essence from the collective bargaining agreements and must be set aside. *See, e.g.*, *Preeminent Protective Services, Inc.*, 330 F. Supp. 3d at 506 (setting award aside where arbitrator devised his own remedy inconsistent with that contemplated by the parties' agreement).

**II.     Sovereign Immunity Bars Awards of Punitive Damages Against The Postal Service.**

The National Association of Letter Carriers (NALC) argues that because Congress intended the Postal Service to operate in a manner similar to a commercial entity, and vested it with the authority to "sue and be sued," it must have intended to subject the Service to punitive damages. Essentially the same argument was proffered and rejected in connection with both the Sherman Act and Title VII. In *U.S. Postal Service v. Flamingo Industries (USA) Ltd.*, the Supreme Court

made clear that the Postal Reorganization Act, 39 U.S.C. § 101 *et seq*., and in particular its "sue and be sued" provision, did not divest the Postal Service of its status as a branch of the federal government; as such, it was immune from liability from suits for treble damages under the Sherman Act. 540 U.S. 736, 746–48 (2004). In so holding, the Court noted the important differences between the Postal Service's public mission and charter and those of other government-created federal corporations. *Id*. Reasoning that Congress would not have subjected the federal government to the specter of antitrust treble damages, it could not have intended to include the Postal Service as a "person" subject to liability under the Act. *Id*. at 745.

Similarly, in *Baker v. Runyon*, the Seventh Circuit noted the distinctions between the Postal Service and other federal instrumentalities, such as Amtrak and the Corporation for Public Broadcasting, and explicitly rejected the argument that the sue and be sued provision of the PRA subjected the Postal Service to liability for punitive damages. 114 F.3d 668, 670–72 (7th Cir. 1997). The Congressional decision to "lodg[e] the Postal Service within the federal government" gave rise to "the more logical inference … that it did not intend to subject the agency to punitive damages." *Id*. at 671; *accord Robinson v. Runyon*, 149 F.3d 507, 516–17 (6th Cir. 1998) ("Nor does Congress' waiver of sovereign immunity and designation of the Postal Service as a "sue and be sued" entity alter this determination and its exemption from punitive damages under Title VII.").

Even if the Postal Service were more like a federally chartered corporation, the fact is that the majority of federal courts of appeal—including the Sixth, Eighth, Ninth, and Eleventh Circuits—have held that the mere authority of federal instrumentalities to "sue and be sued" does not waive their immunity from punitive damages. *See Commerce Fed. Sav. Bank v. FDIC*, 872 F.2d 1240, 1247–48 (6th Cir. 1989); *Smith v. Russellville Prod. Credit Ass'n*, 777 F.2d 1544,

1549–50 (11th Cir. 1985); *Springer v. Bryant*, 897 F.2d 1085, 1089 (11th Cir. 1990); *Rohweder v. Aberdeen Prod. Credit Ass'n*, 765 F.2d 109, 113 (8th Cir. 1985); *Matter of Sparkman*, 703 F.2d 1097, 1100–01 (9th Cir. 1983). That line of authority is consistent with the Supreme Court's decision in *Missouri Pacific Railroad Co. v. Ault*, which held that the doctrine of sovereign immunity barred punitive fines against the United States and the director of a federal agency absent an express waiver of that immunity. 256 U.S. 554, 563–65 (1921).

While the Supreme Court's decision in *FDIC v. Meyer*, 510 U.S. 471, 481 (1994), held that courts "'liberally construe the sue-and-be-sued clause'" and will presume that a federal instrumentality's liability is akin to other businesses, *Meyer* involved an award of compensatory, not punitive damages, arising from a constitutional tort. It did not address immunity from punitive damages at all. Moreover, *Meyer* involved a federally chartered corporation rather than a branch of the federal government, where punitive damages would undermine the Postal Service's ability to fulfill its Congressionally-mandated universal service mission and increase costs to the rate-paying public.

In contrast, the Supreme Court's other decisions addressing sue and be sued clauses support the continuing viability of the *Ault* holding and its application here. The Court has held that sue and be sued clauses allow only for the "'*ordinary*' incidents of suits," *Loeffler v. Frank,* 486 U.S. 549, 555 (quoting *Standard Oil Co. of N.J. v. United States*, 267 U.S. 76, 79 (1925)) (emphasis added), and "'the natural and appropriate incidents of legal proceedings,'" *Reconst. Fin. Corp. v. J.G. Menihan Corp.,* 312 U.S. 81, 85 (1941). Such ordinary and natural incidents of suit include prejudgment interest, *Loeffler*, 486 U.S. at 554–56; litigation costs, *J.G. Menihan Corp*. at 85–86; and garnishment, *Fed. Hous. Admin. v. Burr*, 309 U.S. 242, 245–46 (1940). By contrast, punitive damages are not ordinary or natural incidents of suits because, unlike prejudgment

6

interest, litigation costs, and garnishment, are, by definition, extraordinary and punitive, and often uninsurable as a matter of state public policy. *See City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 266 (1981) ("Punitive damages by definition are not intended to compensate the injured party. . . .").

In addition, in evaluating sue and be sued clauses, and in formulating the "liberally construed" policy, the Supreme Court looked for guidance to the claims that Congress has allowed against the federal government. *Keifer & Keifer v. Reconst. Fin. Corp.*, 306 U.S. 381, 396–97 (1939) ("Congress has embarked upon a generous policy of consent for suits against the government sounding in tort …. Congress has thus clearly manifested an attitude which serves as a guide to the scope of liability implicit in the general authority it has conferred on governmental corporations to sue and be sued."); *see also Franchise Tax Bd. of Cal. v. U.S. Postal Serv.*, 467 U.S. 512, 517 (1984) (the rule that sue and be sued clauses are liberally construed "is in line with the current disfavor of the doctrine of governmental immunity"). Because Congress has liberally allowed claims for compensatory damages, it was reasonable to conclude that Congress likewise intended to allow those same claims against the federal government. In stark contrast, Congress has carefully preserved the federal government's immunity from punitive damages claims. *See, e.g.*, 28 U.S.C. § 2674 ("The United States shall be liable, respecting the provisions of this title relating to tort claims in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for … *punitive damages*.") (emphasis added). Because the Supreme Court has held that the federal government's immunity is "a guide" to the immunity of federal instrumentalities under sue and be sued clauses, and because Congress has preserved the federal government's immunity from punitive damages claims, the Court's decisions plainly support the conclusion, consistent with its holding in *Ault*, that when Congress authorized the

Postal Service to sue and be sued it did not intend to authorize awards of punitive damages against the Service.[1]

But even if the presumption against immunity in *FDIC v. Meyer* were to apply, the Postal Service has overcome that presumption for at least two obvious reasons. First, punitive damage awards are not consistent with the statutory and constitutional scheme here because they are only rarely allowed against government entities, and would undermine rather than support public policy. *Vt. Agency of Natural Res. v. United States*, 529 U.S. 765, 784-85 (2000) (recognizing "the *presumption against* imposition of punitive damages on government entities") (emphasis added); *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 266–67 (1981) ("[A]n award of

---

[1] Plaintiff has identified few published decisions addressing claims for punitive damages against the Postal Service for breach of collective bargaining or employment agreements.  However, those courts that have touched upon the issue have consistently found that, just as in other contexts, punitive damages may not be awarded against the Postal Service.  See *Bowen v. U.S. Postal Service*, 470 F.Supp. 1127, 1131 (W.D. Va. 1979), aff'd in part and rev'd in part on other grounds, 624 F.2d 79 (4th Cir. 1981), rev'd on other grounds, 459 U.S. 212 (1983)( "Plaintiff is, under the normal principles applicable to this type of case, entitled to recover punitive damages against the defendant USPS. That defendant has, however, raised a plea of sovereign immunity to this aspect of the case, and the Court finds sovereign immunity is a bar to recovery of punitive damages against the USPS."); accord *McLean v. U.S. Postal Service*, 544 F.Supp. 821, 828 (W.D. Pa. 1982)("This Court, however, feels that it is important to comment with regard to Plaintiff's claim for punitive damages. At oral argument, counsel for Plaintiff argued that the Postal Service is guilty of outrageous conduct and that punitive damages were sought as relief for something akin to the tort of wrongful discharge recognized under Pennsylvania law. Plaintiff's counsel, however, could provide no basis for his claim in federal law. Indeed, the case law indicates that punitive damages may not be recovered against the Postal Service."); *U.S. Postal Service v. American Postal Workers Union, AFL-CIO*, No. 4:08–cv–2089, 2009 WL 10677297, *3 (D.S.C. 2009)("The Service next contends that the arbitrator impermissibly awarded punitive damages against the Service. The Union does not dispute that punitive damages would be inappropriate in this case. The Fourth Circuit has held that '[a]bsent an express provision in the collective bargaining agreement, the law of this circuit does not permit an arbitrator to impose a punitive award or punitive damages.' *Island Creek Coal Co. v. Dist. 28, United Mine Workers of Am.,* 29 F.3d 126, 129 (4th Cir. 1994). The Union has not submitted, and this Court has not found, any language in the parties' collective bargaining agreement providing for punitive damages.  In addition, the Union has not strongly challenged the Service's contention that it has sovereign immunity from punitive damages.").

punitive damages against a [government agency] 'punishes' only the taxpayers, who took no part in the commission of the tort …. Such awards are in effect a windfall to a fully compensated plaintiff, and are likely accompanied by an increase in taxes or a reduction of public services for the citizens footing the bill."). As the Seventh Circuit noted in *Baker v. Runyon*:

> This rationale applies with equal force to the Postal Service. Although the Postal Service is a 'self-funding' entity, this is not to say that it is divorced from the United States Treasury. The Postal Service is self-funding only in the sense that Congress has appropriated to it all of the Postal Service's own revenues. 39 U.S.C. § 2401(a). It nevertheless is 'operated as a basic and fundamental service provided to the people by the Government of the United States ... and supported by the people.' *Id.* at § 101(a). Even in areas in which post offices are not self-sustaining, postal service is guaranteed. *Id.* at § 101(b). Any deficiency in these revenues would require either increased postal costs, a reduction in postal services, or, instead of raising the costs of stamps, additional appropriations by Congress. See *id.* at § 2401(b) (listing appropriations, in addition to Postal Service revenues, required to operate Service in various years)."

114 F.3d 668, 672 (7th Cir. 1997).

Second, because the Postal Service fulfills a critical public service, subjecting it to punitive damages would undermine its mission by diverting funds that would otherwise be utilized to ensure the prompt, secure, and efficient delivery of mail. As a result, punitive damages "are not consistent with the statutory scheme [immunity] is necessary to avoid grave interference with the performance of a governmental function  and it was plainly the purpose of Congress to use the 'sue and be sued' clause in a narrow sense." *FDIC v. Meyer*, 510 U.S. at 480 (quoting *Burr*, 309 U.S. at 245).

For the foregoing reasons, awards of punitive damages against the Postal Service are barred by sovereign immunity, and the arbitral award should be vacated as contrary to an "explicit, well defined and dominant" public policy ascertainable by reference to the laws and legal precedents just described. *Nat'l R. R. Passenger Corp.*, *supra*, 855 F.3d at 342.

III.   **Even Absent Sovereign Immunity, Punitive Damages Are Rarely Awarded In Labor Arbitrations.**

A.   **The Well-Settled General Rule Of Law Is That Punitive Damages May Not Be Awarded For A Breach of Contract.**

The NALC does not contest that under well-established principles of contract law punitive damages are not recoverable in a contract action, and such awards are inappropriate even in the context of an aggravated breach. See Restatement (Second) of Contracts § 355 (Am. Law Inst. 1981) ("The purposes of awarding contract damages is to compensate the injured party…. For this reason, courts in contract cases do not award damages to punish the party in breach or to serve as an example to others unless the conduct constituting the breach is also a tort for which punitive damages are recoverable.") Rather, the Union contends that "the law of commercial contracts cannot be grafted onto collective bargaining law," a representation that is facially absurd, as labor agreements are contracts and arbitrators, including postal arbitrators, routinely invoke and apply general principles of contract law and interpretation. Indeed, in a thoroughly reasoned regional arbitral decision, Arbitrator Carlton Snow—who also served as a national postal arbitrator—specifically invoked general contract principles in declining to award punitive damages, explaining:

> In fashioning remedies, however, arbitrators generally have adhered to the principle that damages should correspond to the harm suffered. A deeply rooted principle of measuring contract damages is that such damages must be based on the injured party's expectation. (See, Fuller and Perdue, "*The Reliance Interest in Contract Damages*," 46 Yale L.J. 52 (1936)). The expectation interest of the party in contract cases generally has been measured by the actual worth that performance of the agreement would have had for the individual, and in this case the Union has not demonstrated that any employee was harmed. The weight of the evidence makes it reasonable to conclude that all affected employees received timely notice. Moreover, even if one accepted the Union's theory of the case, only full-time bargaining unit members would receive out-of-schedule pay, and an award to all employees, including part-time flexible employees, would not conform to the administrative regulation.

10

> It is recognized that some arbitrators have awarded punitive damages when a party's violation of an agreement has been constant and repeated or malicious. That approach, however, has not been consistent with the common law which has taught that, no matter how reprehensible a breach, punitive damages which were in excess of an injured party's lost expectation generally have not been awarded for a breach of contract. (See, *Judge A. White, Inc., v. Metropolitan Merchandise Mart*, 107 A.2d 892 (1954); *Den v. Den*, 222 A.2d 647 (1966); and *White v. Venkowski*, 155 N.W.2d 74 (1967)). As the U.S. Supreme Court has taught, "If the contract is broken, the measure of damages generally is the same, whatever the cause of the breach." (See, *Globe Refining Company v. Landa Cotton Oil Company*, 190 U.S. 540, 544 (1903)).

*See* Declaration of Richard Acker at 3 (citing Case No. W1C-5F-C 4734).

Although the D.C. Circuit has not addressed the issue, our sister Circuit to the south has recognized that because punitive damages are not typically available in contract actions, the power to award them may not be inferred and must be explicitly set forth in contractual language. *Island Creek Coal Co. v. Dist. 28, United Mine Workers of Am.*, 29 F.3d 126, 129 (4th Cir. 1994); *see also Int'l Union of Operating Eng'rs, Local No. 450 v. Mid-Valley Inc.*, 347 F. Supp. 1104, 1109 (S.D. Texas 1972) ("Contracting parties do not normally agree to assess exemplary damages for breach of contract. Such damages being punitive in nature are rare in contract law. Contractual consent to so drastic a 'remedy' for simple breach cannot be implied. Therefore, an arbitrator's assessment of punitive damages must be grounded in express language."); *cf. Barnes v. Gorman*, 536 U.S. 181, 187–88 (2002) (noting that "punitive damages, unlike compensatory damages and injunction, are generally not available for breach of contract," and refusing to imply a right to such damages in the absence of express statutory language authorizing them).

In the instant case, nothing in the NALC National Agreement suggests that the Postal Service consented to the imposition of punitive remedies for a breach of contract, and the Union has

cited to no explicit contract language authorizing such awards. Consequently, the award of such

a remedy would be contrary to settled law, the reasonable expectations of the parties, and would

exceed the remedial powers vested in the arbitrator by the National Agreement.

### B. Punitive Damages are Especially Disfavored in the Context of Actions to Enforce Collective Bargaining Agreements.

Although the NALC is correct that in rare cases arbitrators have issued punitive awards in

labor arbitrations, they do not dispute that the prevailing view is that punitive remedies are

foreign to the labor relations landscape and injurious to the ongoing collaborative relationships

necessary to ensure industrial peace and productive collective bargaining. For example, 20

Williston on Contracts §55:70 (4th ed., Nov. 2018 Update), states: "Punitive damages are not

favored under the general policy of the labor laws, since they are not compensation for injury,

but instead are private fines levied to punish reprehensible conduct and to deter its future

occurrence. The general rule is that punitive damages are not allowed in actions for breach of

contract brought under the Labor-Management Relations Act (LMRA)."[2] Consistent with this

principle, the U.S. Supreme Court has specifically held that punitive damages may not be

imposed upon unions for a breach of the duty of fair representation. *Int'l Bhd. of Elec. Workers*

*v. Foust*, 442 U.S. 42, 52 (1979) ("Because general labor policy disfavors punishment, and the

adverse consequences of punitive damages awards could be substantial, we hold that such

---

[2] The statute authorizing suits for violations of contracts between the Postal Service and its labor organizations, 39 U.S.C. §1208(b), has been characterized as the "postal analogue" to Section 301 of the LMRA, 29 U.S.C. § 185, which provides federal courts with jurisdiction over suits for violations of contracts between private sector unions and employers. The same substantive law applies to both § 1208(b) and § 301. *See, e.g.*, *Lawson v. Truck Drivers, Chauffeurs & Helpers, Local Union 100*, 698 F.2d 250, 255 (6th Cir. 1983) ("This Circuit and our sister circuits have uniformly held that 39 U.S.C. § 1208(b) is an analogue of Section 301(a) of the Labor Management Relations Act of 1957 and have consistently applied § 301 law to suits brought pursuant to 39 U.S.C. § 1208(b)." (citations omitted)).

damages may not be assessed against a union that breaches its duty of fair representation by failing properly to pursue a grievance."). Post-*Foust*, a majority of subsequent lower court decisions have held that punitive damages are never available against a union in an action for a breach of a collective bargaining agreement brought under LMRA § 301. *See Annot. Award of Punitive Damages Under § 301 of Labor Management Relations Act,* 71 A.L.R.Fed. 221, § 2 (1985). Several Circuits, including the Third and Eleventh, have stated that punitive damages are never available for a breach of a labor agreement under § 301, **regardless of the identity of the defendant in the case**. *Id*. at § 3 (emphasis added); *see also Nietzsche v. Stein, Inc.*, 797 F. Supp. 595, 596–99 (N.D. Ohio 1992) (cataloguing cases). Though the excerpt is lengthy, it is worth quoting in its entirety Judge Posner's compelling argument for declining to award punitive damages for a breach of a labor contract:

> The complaint seeks punitive damages for what the plaintiffs describe as Jewel's "outrageous" conduct in fabricating an oral reopener. **I agree with Jewel, and with the majority of courts that have addressed the question [citation omitted] that punitive damages are not available in a section 301 suit.** The Supreme Court has so held with regard to union defendants sued for breach of their duty of fair representation, *International Brotherhood of Electrical Workers v. Foust,* 442 U.S. 42, 99 S.Ct. 2121, 60 L.Ed.2d 698 (1979), and it would be unreasonable to distinguish between union and employer defendants in this regard, or between suits for breach of contract and suits for breach of the duty of fair representation:
>
> a.  **When the Taft–Hartley Act was passed in 1947, punitive damages for breach of contract were virtually, perhaps completely, unknown**. Section 301 of the Act does not create a complete remedial scheme. Essentially it just makes collective bargaining agreements actionable, and leaves the incidents of the 301 suits—statute of limitations, other defenses, third-party beneficiaries, parol evidence rule, and all the rest, including remedy—to be worked out by the courts in the exercise of their ill-defined but adequate power to make federal common law. In interpreting other statutes that create a federal right without specifying the details of remedy and procedure, notably 42 U.S.C. § 1983, a statute first passed in 1871, the Supreme Court has looked to the common law at the time of enactment. *Smith v. Wade,* 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983). If that approach is taken here, it becomes evident that punitive damages are unavailable in section 301 suits.
>
> b.  Punitive damages are of course far more common in tort cases than in contract cases. Breach of the duty of fair representation is a form of breach of fiduciary duty, and is therefore a tort. **Since punitive damages are not available for breach of the duty of fair**

representation (*Foust*), they surely are not available for a simple breach of contract.

c.  Partly in explanation of *Foust,* partly related to the point just made, **federal policy aims to promote harmonious labor relations; this is one of the justifications for the mildness of the National Labor Relations Board's remedial powers.** 442 U.S. at 52, 99 S.Ct. at 2127; *Republic Steel Corp. v. NLRB,* 311 U.S. 7, 10, 61 S.Ct. 77, 78, 85 L.Ed. 6 (1940). That aim would be deflected if punitive damages were available in section 301 suits. **The possibility on the one side of recovering and on the other side of having to pay potentially astronomical damages would place a cloud over labor negotiations, engendering formality and suspicion inimical to the harmonious resolution of labor disputes.**

**All three reasons I have just given are independent of whether the defendant is a union or an employer. I am convinced therefore that the Supreme Court would not allow punitive damages to be awarded against employers for violating collective bargaining agreements.**

*Merk v. Jewel Food Stores, Division of Jewel Companies, Inc.*, 734 F. Supp. 330, 331–32 (N.D. Ill. 1990) (emphasis added), *rev'd on other grounds* 945 F.2d 889 (7th Cir. 1991), *cert. denied* (1992).

All of the considerations detailed by Judge Posner apply with equal force in the context of

labor arbitrations. As the First Circuit explained in *Raytheon Co. v. Automated Business Systems,*

*Inc.*:

> Labor arbitration is an integral aspect of the entire collective bargaining process; it is intended to be a part of a continuing and ameliorating enterprise between parties who maintain an ongoing working relationship …. Punitive actions are disfavored; the award of punitive damages in the midst of a steady stream of arbitrations between a company and its unions might well undercut both sides' confidence in the arbitration process and decrease their commitment to this essential aspect of "industrial self-government."

882 F.2d 6, 10 (1st Cir. 1989).

Significantly, the perceived availability of punitive monetary penalties has caused the very

harm Judge Posner and the First Circuit presaged. The underlying grievance in the instant case

failed to settle only because the Union was demanding punitive sanctions. Moreover, word has

spread among NALC locals, and like lemmings to the sea, business agents are flocking to

arbitration with claims for punitive remedies and penalties for routine violations of the contract

and/or formal and informal cease and desist agreements. Declaration of Richard Acker at 2-3.

Rather than fostering the prompt resolution of disputes in locations where such remedies have been awarded, the potential availability of a new and significant revenue stream has incentivized the arbitration of often minor claims that should have been resolved informally at earlier stages of the grievance process. *Id*. The costs associated with such awards has injected a disruptive and antagonistic influence into the grievance procedure to the ultimate detriment of all concerned. *Id*. Consequently, this Court should find that the imposition of such damages on the facts of this case does not draw its essence from the contract and exceeds the authority of the Arbitrator under Section 15 of the parties' National Agreement.

### C. The Failure to Timely Provide the Requested Documentation of Supervisor Retraining is Not the Type of Extraordinary Conduct Necessary to Support a Punitive Damages Award.

Even those courts that have assumed, arguendo, the possible availability of damages against an employer under § 301, have held that punitive damages should only be assessed in extraordinary circumstances. For example, in *Crawford v. Pittsburgh-Des Moines Steel Co.*, 386 F. Supp. 290, 294–95 (D. Wyo. 1974), the court found that an award of punitive damages would not be proper where the allegation was that the employer willfully denied the employees time off from their jobs in order to vote in a primary election, in violation of a contractual provision permitting them two hours off for that purpose. The court stated:

> Punitive damages are generally not recoverable in a breach of contract action, damages in such a case being limited to the pecuniary loss sustained…. An award of punitive damages in a breach of contract action is the exception to the rule; and, as federal labor law policy encourages remedial actions, as opposed to punitive, the claim against the employer for punitive damages cannot stand, absent extraordinary circumstances.

*Id*. (citations omitted). Similarly, in *Chrysler Workers Ass'n v. Chrysler Corp*., 663 F. Supp. 1134, 1137–38 (N.D. Ohio 1986), *aff'd* 834 F.2d 573 (6th Cir. 1987), *cert. denied* 486 U.S. 1033 (1988), the plaintiff employees alleged that Chrysler and the Union unilaterally entered into

surreptitious agreements which extinguished plaintiffs' rights to return to their "home" plants; arbitrarily, capriciously and discriminatorily failed to process grievances; and intentionally and/or negligently misrepresented to plaintiffs that the sale of a division of the company would not have an adverse effect on their home plant return rights. The court noted that "Punitive damages are generally not recoverable in an action brought under § 301 of the [LMRA] for breach of a collective bargaining agreement by an employee…. To the extent that such damages are recoverable, an award for the same must be based on conduct which is more than merely intentional. Conduct which justifies an award for punitive damages must be 'outrageous or extraordinary.'" *Id*. at 1141 (citations omitted). The court then found that the pleaded allegations fell short of that standard. Finally, in *Nietzsche v. Stein, Inc.*, *supra*, 797 F. Supp. at 595, 597, the court adopted Judge Posner's reasoning to find that punitive damages are not available in a Section 301 suit against an employer for a breach of a collective bargaining agreement. However, the court also held in the alternative: "The court must also point out that, even were we to follow a contrary view, the allegations of the complaint against Stein are insufficient upon which to premise a prayer for punitive damages. The contrary view observes that '[t]o the extent that such damages are recoverable, an award for same must be based on conduct which is more than merely intentional. Conduct which justifies an award for punitive damages must be 'outrageous or extraordinary.'" *Id*. at 599 (citations omitted). Since the conduct at issue consisted of discharge without just cause and perfunctory dismissal of plaintiff's grievance, punitive damages were not warranted.  *Id*.

Arbitrators do not function to generally police the conduct of the parties; their role is to decide the contractual disputes presented to them for resolution. *See First Options of Chicago v. Kaplan*, 514 U.S. 938, 943 (1995)("arbitration is simply a matter of contract between the parties;

it is a way to resolve those disputes – but only those disputes – that the parties have agreed to submit to arbitration").   In this case, the sole issue that the parties agreed to submit to arbitration was the appropriate remedy for the Postal Service's delay in providing local union officials documentation reflecting that the three postal supervisors had completed their remedial training (ECF No. 14 at 2-3); the other grievances concerning time clock violations had already been settled and the affected employees made whole. Even if the arbitrator were correct that the Postal Service's delay was intentional and maliciously motivated, that is not the type of "outrageous," "egregious," and "extraordinary" conduct necessary to support a punitive damages award. In fact, the NALC points to no case in which a fairly routine contractual breach such as that at issue here provided the basis for an award of punitive damages against a private employer, much less a branch of the federal government. Significantly, the award at issue arose in just one small post office out of the more than 33,000 postal facilities nationwide. Because the award was calculated, in part, based upon the number of carriers at that post office, the nearly $250,000[3] "penalty" could easily have been millions at a larger facility, and billions if applied nationwide.

IV.  **No National Postal Arbitration Decision Has Held That The Parties' Collective Bargaining Agreement Contemplates The Award Of Punitive Damages, And The Regional Arbitration and Step B Decisions Cited By the NALC Do Not Establish National Precedent.**

1.  **None of the National Arbitration Decisions Cited by the NALC Approved the Award of Punitive Damages.**

Faced with a contract that does not provide for the award of punitive damages in a context in which such awards are explicitly disfavored and rarely granted, the NALC attempts to fashion a rationale justifying the imposition of such damages based upon the theory that three national arbitration decisions and a handful of regional awards establish "industrial common

---

[3] The total penalty assessed by Arbitrator Roberts was $243,410.00; the method of calculation is described in the Declaration of Richard Acker at 2.

law" sanctioning punitive arbitral awards against the Postal Service. Docket Entry #14 at 20-22. There are a number of problems with that theory. First and foremost, Arbitrator Roberts did not rely upon it. Nowhere in his decision does he state that a punitive remedy was justified by any provision of the parties' contract or by any body of industrial common law. In fact, he only cited Arbitrator Mittenthal's 1994 national level award to note that, in his view, the award did not explicitly negate his self-perceived power to police compliance with "cease and desist orders" through the imposition of punitive damages. Docket Entry #14-18 at 18.

Second, rather than endorse punitive damages awards, Arbitrator Mittenthal's 1994 decision, which involved far more egregious and extensive violations than the conduct alleged in this case, actually reaffirmed the well-established contract principle, discussed above, that:

> It is generally accepted in labor arbitration that a damage award, arising from a violation of the collective bargaining agreement, should be limited to the amount necessary to make the injured employees whole. Those deprived of a contractual benefit are made whole for their loss. They receive compensatory damages to the extent required, no more and no less.

Docket Entry #14-19 at 15. Arbitrator Mittenthal neither issued nor sanctioned the issuance of punitive remedies, and expressly rejected the Union's request for damages premised on a theory of unjust enrichment. Instead, he concluded that *"[s]ome form of make-whole remedy, based on a showing of actual damage, seems in order*." *Id*. at 17. (emphasis added). Arbitrator Mittenthal's decision, as the NALC concedes, is a binding and controlling interpretation of the remedial limitations of the parties' National Agreement, and Arbitrator Roberts not only ignored it, he turned that decision on its head. *See* Docket Entry #14 at 22.

The NALC relies on two other national arbitration decisions, neither of which was cited by Arbitrator Roberts, in support of its claim that "ample" national arbitral precedent validates

the award of punitive sanctions against the Postal Service. Docket Entry #14 at 6. As with the earlier-cited 1994 Mitthenthal decision, the NALC misstates the holding of each case.

The 1979 Gamser decision dealt with the issue of whether the appropriate remedy for the Postal Service's failure to provide contractually required equitable overtime opportunities during a given quarter would be to pay employees deprived of such overtime opportunities for the overtime hours they did not work, as the Union advocated, or to provide an equalizing overtime opportunity to the affected employees in the next immediate quarter, as the Postal Service claimed. Docket Entry #14-4 at 2. After reviewing the decisions of "a fair sample of awards on this issue," Arbitrator Gamser found that either remedy could be appropriate depending upon the circumstances of the case. *Id*. at 11. So, for example, if the overtime were awarded to an employee in a classification outside the eligible pool, "many arbitrators have found that monetary compensation to the most eligible [employee in the pool] is the appropriate remedy since there is no way of replenishing the bank of overtime available to employees in that job classification." *Id*. at 10. Similarly, he found that there appeared to be a general consensus among arbitrators that "monetary compensation is also in order when a failure to provide the appropriate employee with the opportunity was caused by a flagrant disregard or defiance of the contractual obligation, such as distribution of overtime based upon favoritism or some other inappropriate criteria." *Id*. at 10. In such circumstances the "compensatory monetary award" "would provide the deterrent effect which is plainly warranted." *Id*. In either event, the award clearly would be compensatory, tied to the overtime wage rate and the actual hours the eligible employee would have worked. Nothing in the Gamser decision supports the imposition of punitive monetary sanctions wholly unrelated to the breach and any actual loss incurred by employees, which is precisely the type of remedy Arbitrator Roberts imposed.

The second decision cited by the NALC, a 1986 decision by Arbitrator Mittenthal, is also inapposite. In that decision, the NALC argued for a single uniform remedy for any violation of the national agreement's prohibition against forced overtime beyond established contractual limits, namely pay at two and one-half times the employee's hourly rate. Docket Entry #14-5 at 2. The Postal Service, by contrast, argued that the national agreement already established the appropriate remedy of penalty overtime at double the employee's hourly rate. *Id*. Arbitrator Mittenthal concluded that the contractual penalty overtime provisions were not controlling and that the contract did not define the appropriate remedy for the forced overtime violations at issue. *Id*. at 6-8. He refused to endorse the Union's request for a uniform penalty, and issued no specific remedy, noting that the appropriate remedy would depend upon the facts and circumstances of the individual case. Like Arbitrator Gamser, Arbitrator Mittenthal did not impose or endorse any form of punitive remedy unrelated to the actual injury sustained.

In short, none of the national level arbitral awards cited by the NALC supports the proposition that the parties intended to vest postal arbitrators with the power to punish through punitive monetary sanctions. In fact, Arbitrator Mittenthal's 1994 decision reflects that the contractual remedies, like those available under the National Labor Relations Act, are intended to provide compensatory make whole relief.

## 2. Regional Arbitration Awards Do Not Establish National Precedent.

The NALC's argument that regional arbitration awards establish industrial common law that controls the proper interpretation of the National Agreement is specious. One of the foundational principles of postal arbitrations is that regional arbitrations do not establish national precedent. *See* Declaration of Richard Acker at 4.  As National Arbitrator Neil Bernstein succinctly put it:

> Further, the present National Arbitrator is not bound in any way by awards issued by regional arbitrators on this issue. The whole purpose of the national arbitration scheme is to establish a level of definitive rulings on contract interpretation questions of general applicability. National decisions bind the regional arbitrations, and not the reverse.

*Id*. (citing Case No. H1N-1J-C 23247 (August 7, 1987)). As reflected in Mr. Acker's declaration, numerous national postal arbitration decisions have affirmed this principle, which is binding on the parties and effectively negates the proposition that regional arbitration decisions establish precedential "industrial common law" concerning the remedial limits of the national agreement.[4] *Id*. at 4-5.

### 3.  Step B Decisions May Not Be Cited For Precedential Purposes

The Union's attempt to rely upon Step B settlements as establishing precedent for interpretation of the remedial parameters of the National Agreement is also unavailing. The Postal Service processes thousands of grievances every year, and the parties routinely settle disputes as a matter of convenience, rather than based upon their respective perceived merits of the claims at issue. Declaration of Richard Acker at 5.  For that reason, the parties have agreed that Step B settlements have no national application, and may not be cited as precedent outside the specific installation in question. *Id*. Moreover, even if some postal employees serving on Step B panels have previously agreed to minor "penalties" as part of a non-precedential settlement, this does not establish entitlement to such awards under the contract.

---

[4] Even if regional decisions were relevant, the fact is the cases cut both ways; numerous regional arbitrators have followed Arbitrator Mittenthal's national guidance, declined to impose punitive sanctions, and limited their awards to compensatory make-whole relief. See Acker Declaration at 3 and regional decisions cited therein.

### 4.   The Fact That the Postal Service Has Not Sought To Vacate Other Regional Arbitration Awards Does Not Establish A Waiver Of Its Right To Do So Here.

The NALC argues that the Postal Service somehow waived objection or consented to punitive damage awards because it did not previously petition the Department of Justice to initiate vacatur actions in connection with the handful of regional arbitrations imposing monetary penalties against the Postal Service. The Postal Service and NALC arbitrate hundreds of cases each year, and there have been tens of thousands of awards issued in the 50 years since the parties began their bargaining relationship. The Union has identified only a small number of cases involving monetary sanctions and not one of the awards cited by the NALC involved more than $5,000. In fact, most amounted to less than $500. *See* Docket Entry #14 at 7–9. The Postal Service, recognizing the burden litigating such cases imposes on the Department of Justice and the courts, very rarely asks the Department of Justice to initiate suits to vacate, and the Department even more rarely agrees to bring such an action. The fact the Postal Service and Department of Justice have not acted before now demonstrates, if anything, both the seriousness of this case and the implausibility of the NALC's claims that vacatur of the Robert's award will open the floodgates to federal litigation of postal grievances.

### CONCLUSION

For the reasons set forth herein, Arbitrator Robert's decision cannot be said to draw its essence from the contract. Rather, the language of his award, his cavalier disregard of well-established remedial principles, and his failure to identify any contractual justification for imposing punitive damages for a routine breach of a voluntary settlement agreement demonstrates that he was dispensing his own brand of industrial justice. Moreover, the award directly violated the well defined and dominant public policy of shielding the federal government

from punitive damages claims absent an express waiver of that immunity, which does not exist

here.  Consequently, the Postal Service respectfully requests an order vacating the award.

Respectfully Submitted,

TIMOTHY J. SHEA
D.C. Bar #437437
United States Attorney

DANIEL F. VAN HORN, DC Bar #924092
Chief, Civil Division

/s
BENTON G. PETERSON, BAR # 1029849
Assistant United States Attorney
555 4th Street, N.W. – Civil Division
Washington,D.C. 20530
(202) 252-2534