# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

--------------------------------------------------------------x

UNITED STATES POSTAL SERVICE, :
                                :

*Plaintiff*, :

                                :         Case No. 19-3685-TSC

   - v. - :

                                :

NATIONAL ASSOCIATION OF LETTER :
CARRIERS, AFL-CIO, :

                                :

                *Defendant.* :

--------------------------------------------------------------x

## REPLY MEMORANDUM OF POINTS AND AUTHORITIES OF COUNTERCLAIM PLAINTIFF NATIONAL ASSOCIATION OF LETTER CARRIERS IN SUPPORT OF ITS MOTION TO CONFIRM ARBITRATION AWARD

Peter D. DeChiara (admitted *pro hac vice*)
Judd E. Cohen (admitted *pro hac vice*)
COHEN, WEISS AND SIMON LLP
900 Third Avenue
New York, New York 10022-4869
Tel: (212) 563-4100

Victoria L. Bor (D.C. Bar. No. 288852)
Lucas R. Aubrey (D.C. Bar. No. 982849)
SHERMAN DUNN, P.C.
900 Seventh Street, N.W.
Suite 1000
Washington, D.C.  20001
(202) 785-9300

*Attorneys for National Association*
*of Letter Carriers, AFL-CIO*

## TABLE OF CONTENTS

**Page(s)**

ARGUMENT ....................................................................................................................... 1

I.      BECAUSE IT DRAWS ITS ESSENCE FROM THE COLLECTIVE
        BARGAINING AGREEMENT, THE ROBERTS AWARD EASILY PASSES
        MUSTER UNDER THE EXTRAORDINARILY DEFERENTIAL STANDARD
        OF REVIEW ........................................................................................................... 1

II.     THE COURT MAY NOT SECOND-GUESS ARBITRATOR ROBERTS'
        JUDGMENT THAT A PENALTY WAS APPROPRIATE UNDER THE
        CIRCUMSTANCES ................................................................................................ 5

III.    PENALTY REMEDIES DO NOT REQUIRE EXPRESS CONTRACT
        LANGUAGE ........................................................................................................... 7

IV.     THE ROBERTS AWARD DID NOT VIOLATE PUBLIC POLICY ........................... 10

CONCLUSION ................................................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Postal Workers Union, AFL-CIO v. USPS*,
789 F.2d 1 (D.C. Cir. 1986) .................................................................................6, 10

*Baker v. Runyon*,
114 F.3d 668 (7th Cir. 1997) ....................................................................................15

*Bowen v. USPS*,
470 F.Supp. 1127 (W.D. Va. 1979), *rev'd in part, aff'd in part*, 642 F.2d 79
(4th Cir. 1981), *rev'd*, 459 U.S. 212 (1983) ..............................................................16

*Conn v. Am. Red Cross*,
168 F.Supp.3d 90 (D.D.C. 2016) ........................................................................12, 13

*Eastern Ass'n Coal Corp. v. United Mine Workers, Dist. 17*,
531 U.S. 57 (2000) ...............................................................................................10, 14

*Franchise Tax Bd. v. USPS*,
467 U.S. 512 (1984) .............................................................................................11, 13

*Goss Golden West Sheet Metal, Inc. v. Sheet Metal Workers Int'l Union, Local
104*,
933 F.2d 759 (9th Cir. 1991) ......................................................................................9

*Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Northwest Airlines*,
858 F.2d 427 (8th Cir. 1988) ......................................................................................9

*Int'l Union of Operating Eng'rs, Local 450 v. Mid-Valley, Inc.*,
347 F. Supp 1104 (S.D. Tex. 1972) ...........................................................................9

*Island Creek Coal Co. v. Dist. 28, United Mine Workers of Am.*,
29 F.3d 126 (4th Cir. 1994) ....................................................................................8, 9

*Loeffler v. Frank*,
486 U.S. 549 (1988) .............................................................................11, 13, 14, 15

*Madison Hotel v. Hotel & Restaurant Employees, Local 25, AFL-CIO*,
144 F.3d 855 (D.C. Cir. 1998) ...................................................................................8

*McLean v. USPS*,
544 F.Supp. 821 (W.D. Pa. 1982) ............................................................................16

*Merk v. Jewel Food Stores,*
734 F. Supp. 330 (N.D. Ill. 1990), *rev'd on other grounds*, 945 F.2d 889 (7th Cir. 1991) ................................................................................................14

*Missouri Pacific R. Co. v. Ault,*
256 U.S. 554 (1921).........................................................................................13

*Nat'l Postal Mail Handlers Union v Am. Postal Workers Union,*
589 F.3d 437 (D.C. Cir. 2009) ............................................................................1

*Nat'l R.R. Passenger Corp. v. Fraternal Order of Police, Local 189 Labor Comm.,*
855 F.3d 335 (D.C. Cir. 2017) ..........................................................................10

*Newport v. Fact Concerts, Inc.,*
453 U.S. 247 (1981).........................................................................................14

*Northwest Airlines, Inc. v. Air Line Pilots Ass'n, Int'l,*
808 F.2d 76 (D.C. Cir. 1987)..............................................................................6

*Ogugua v. Not-For-Profit Hosp.,*
217 F.Supp.3d 76 (D.D.C. 2016) ......................................................................11

*Pan Am. Airways Corp. v. Air Line Pilots Ass'n, Int'l,*
206 F.Supp.2d 12 (D.D.C. 2002) ........................................................................3

*Pennsylvania, Dep't of Environmental Resources v. USPS,*
13 F.3d 62 (3d Cir. 1993) .................................................................................13

*Raytheon Co. v. Automated Bus. Sys., Inc.,*
882 F.2d 6 (1st Cir. 1989)...................................................................................7

*Robinson v. Runyon,*
149 F.3d 507 (6th Cir. 1998) ............................................................................16

*Steelworkers v. Enterprise Wheel & Car Corp.,*
363 U.S. 593 (1960).......................................................................................1, 5

*Tesfa v. Am. Red Cross,*
2013 WL 5707849 (S.D. Ohio 2013)................................................................12

*United Paperworkers In't Union AFL-CIO v. Misco, Inc.,*
484 U.S. 29 (1987)..................................................................................*passim*

*United Steelworkers of Am. v. Warrior & Gulf Navigation Co.,*
363 U.S. 574 (1960).............................................................................2, 3, 8, 10

*USPS v. Am. Postal Workers' Union, AFL-CIO,*
   2009 WL 10677297 (D.S.C. 2009)................................................................10, 11

*USPS v. Flamingo Indus. (USA) Ltd.,*
   540 U.S. 736 (2004).............................................................................11, 13, 15, 16

**Statutes**

28 U.S.C. §2674..............................................................................................................13

29 U.S.C. §185................................................................................................................12

39 U.S.C. §401(1)............................................................................................................11

39 U.S.C. §1208(b)....................................................................................................11, 12

NALC submits this reply memorandum of points and authorities in further support of its

February 14, 2020 motion to confirm the Roberts Award [Docket Entry #14], and in reply to the

March 9, 2020 opposition to NALC's motion filed by USPS ("USPS Opp.") [Docket Entry #16].

## **ARGUMENT**

I. **BECAUSE IT DRAWS ITS ESSENCE FROM THE COLLECTIVE BARGAINING AGREEMENT, THE ROBERTS AWARD EASILY PASSES MUSTER UNDER THE EXTRAORDINARILY DEFERENTIAL STANDARD OF REVIEW**

There is no dispute that an "extraordinarily deferential" standard of judicial review

applies to labor arbitration awards, *Nat'l Postal Mail Handlers Union v Am. Postal Workers

Union*, 589 F.3d 437, 440-41 (D.C. Cir. 2009); USPS Opp. 2, and that to pass muster under this

extremely low standard, an award need only "draw[] its essence from the collective bargaining

agreement." *Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597 (1960); *accord

United Paperworkers Int'l Union AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987). As NALC

explained in its opening brief in support of its motion to confirm, the Roberts Award easily

meets this standard. *See* Docket Entry #14, at 20-28.

Arbitrator Roberts based his decision to issue a penalty against USPS on the CBA,

particularly the absence of any excuses or exemptions in the CBA for compliance with a

grievance resolution, an absence that led him to conclude that "compliance is not an optional

amenity found in the Parties 2016-2019 Agreement." Docket Entry #14-18, at 19. Arbitrator

Roberts also relied on Arbitrator Mittenthal's 1994 interpretation of the CBA, an interpretation

that he read to allow "punitive awards in certain situations." *Id*. at 18.

In arguing that the Roberts Award did not draw its essence from the CBA, USPS asserts

that Arbitrator Roberts "ignored" the 1994 Mittenthal award, which it says was a "binding and

controlling interpretation" of the CBA. USPS Opp. 18. Obviously, Arbitrator Roberts did not

ignore the Mittenthal award, since he cited, quoted and discussed it.  *See* Docket Entry #14-18, at pp.17-18.  Moreover, even though the Mittenthal decision was a definitive interpretation of the CBA, USPS's claim that Arbitrator Roberts "turned that decision on its head" amounts to no more than a claim that Arbitrator Roberts misconstrued the CBA.  As the Supreme Court has explained, a court may not reject a labor arbitration award on the ground that the arbitrator may have misconstrued the collective bargaining agreement.  *See Misco*, 484 U.S. at 38 ("a court should not reject an award on the ground that the arbitrator misread the contract"); *id.* ("as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision").

The Roberts Award was also consistent with the well-established practice under the CBA of issuing penalties against USPS when appropriate, a practice established by numerous arbitration awards and Step B decisions.  *See, e.g.,* Docket Entries #14-18 to #14-46; Docket Entry #14-2, ¶30; Docket Entry #14-47.  These awards and decisions constitute part of the "industrial common law" that is "a part of the collective bargaining agreement but not expressed in it."  *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 581-82 (1960).

USPS argues that the Court should ignore this body of decisions because, it asserts, Arbitrator Roberts "did not rely upon it."  USPS Opp. 18.  While the Robert Award makes no express reference to this substantial body of decisions issuing penalties against USPS, that does not mean that Arbitrator Roberts did not rely upon it when considering whether to issue a penalty against USPS in this case.  In his nearly thirty years deciding cases under the CBA, Arbitrator Roberts has issued hundreds of awards, *see* Docket Entry #14-2, ¶10, including at least three in

the last few years *in which he imposed penalties on USPS*, *see* Docket Entries #14-30, #14-32, #14-37.  When he issued the award here, Arbitrator Roberts was clearly aware of the established body of decisions permitting penalties under the CBA, which included three of his own awards, and it undoubtedly informed his decision-making in this case.

USPS next asserts that regional arbitration awards constitute only persuasive, not definitive, interpretations of the CBA, *see* USPS Opp. 20-21; Docket Entry #16-1, ¶15, and that Step B decisions have limited precedential value, *see id.* ¶16.[1]  The "industrial common law" under a collective bargaining agreement, however, is not confined to authoritative contract interpretations or binding precedents, but include any "practices of the industry and the shop." *Warrior & Gulf*, 363 U.S. at 581-82; *see also Pan Am. Airways Corp. v. Air Line Pilots Ass'n, Int'l*, 206 F.Supp.2d 12, 21 (D.D.C. 2002) (arbitrators' decisions may rely on the "custom, common law, and practice within an industry").  Because regional awards and Step B decisions imposing penalties on USPS indisputably constitute practice under the CBA, they are part of the "industrial common law" that is "equally a part of the collective bargaining agreement although not expressed in it." *Warrior & Gulf*, 363 U.S. at 581-82.

By not challenging -- until now -- any regional arbitration awards imposing a penalty, and by having its authorized representatives on Step B teams repeatedly agree to the issuance of penalties, USPS has effectively consented to the practice of having penalties issued against it. USPS tries to explain its years of acquiescence to awards that issued penalties by pointing to the burden of litigating suits to vacate and to the relatively small penalty sums awarded.  *See* USPS

---

[1] The persuasive authority of regional awards can be seen, for example, in the national-level award by Carlton Snow that USPS cites.  *See* Docket Entry #16-1, Exhibit I, at 25 ("Further support for this conclusion is found *in three regional arbitration decisions* ...") (emphasis added).

Opp. 22.  USPS's excuse -- essentially, that challenging prior penalty awards wasn't worth it -- rings hollow in light of USPS' strident assertions that penalty awards, by their very nature, violate USPS's sovereign immunity and undermine productive labor relations.  *See* USPS Opp. 4, 14.  If penalty awards were as obnoxious to these principles as USPS now claims, USPS should have challenged them long ago.

In any event, whatever the reason for its inaction and acquiescence, USPS has effectively consented to awards that issue penalties.  Moreover, the management members of the Step B teams that issued penalties against USPS were not just "some postal employees," as USPS now asserts, USPS Opp. 21, but were USPS's designated representatives authorized to act on its behalf for purposes of resolving disputes.  *See* Docket Entry #14-2, ¶5.  Their agreement to penalties constituted USPS's consent.

USPS further asserts that awards under the CBA "cut both ways," with some arbitrators declining to issue penalties.  *See* USPS Opp. 21 n.4.  It also cites a national award in which Arbitrator Carlton Snow expressed his general disapproval of penalties.  *See id*. 10-11.  However, Arbitrator Snow's award recognized "the teaching of some arbitrators that punitive damages *should be awarded*" under appropriate circumstances.  Docket Entry #16-1, Exhibit B, at 14 (emphasis added).  Thus, the most USPS can demonstrate is a lack of consensus among arbitrators as to whether penalty awards may issue under the CBA.  That apparent lack of consensus precludes the Court from finding Arbitrator Roberts' view to be wrong.  More importantly, as noted above, whether he was wrong or right is irrelevant here; courts may not deny enforcement of an award because the arbitrator had a mistaken understanding of the collective bargaining agreement.  *See Misco*, 484 U.S. at 38.

4

## II.   THE COURT MAY NOT SECOND-GUESS ARBITRATOR ROBERTS' JUDGMENT THAT A PENALTY WAS APPROPRIATE UNDER THE CIRCUMSTANCES

USPS next argues that its conduct in this case was not the type of outrageous, egregious or extraordinary conduct that would warrant a penalty.  *See* USPS Opp. 17.  That argument fails even if the Court believes the penalty was excessive under the circumstances because, as the Supreme Court has held, it is the arbitrator's judgment that the parties' agreed to accept.  *See Misco*, 484 U.S. at 38 ("where it is contemplated that the arbitrator will determine the remedies for contract violations that he finds, courts *have no authority to disagree with his honest judgment* in that respect") (emphasis added).  In any event, Arbitrator Roberts made a factual finding that USPS's "ignoring" prior grievance resolutions in this case was "clearly willful and malicious."  Docket Entry #14-18.  That finding is not subject to challenge or review.  *See Misco*, 484 U.S. at 38 (courts "do not sit to hear claims of *factual* or legal *error* by an arbitrator") (emphasis added).  Thus, even assuming that an arbitrator were only allowed to issue a penalty upon finding outrageous conduct (and there is no such requirement in the CBA), Arbitrator Roberts' unreviewable finding that USPS engaged in "willful and malicious" conduct would still preclude the Court from setting aside his award.

In arguing that penalty awards may only issue upon a finding of outrageous, egregious or extraordinary conduct, USPS relies not on the CBA but on judicial interpretations of federal labor law, interpretations made in the context of suits by employees against their employer and union.  *See* USPS Opp. 12-16.  Whether, and under what circumstances, punitive damages are permitted under the Labor-Management Relations Act, the federal duty of fair representation, or any other law external to the CBA, is not relevant to the Court's inquiry here.  Arbitrator Roberts' charge was to interpret and apply the CBA, and to issue an award that drew its essence from the CBA.  *See Enterprise Wheel*, 363 U.S. at 597 ("arbitrator is commissioned to interpret

5

and apply the collective bargaining agreement").  So long as he fulfilled that charge, his award

must be sustained.  Indeed, even if an arbitration award rests on a misconception of what external

law permits, that would not provide grounds for denying enforcement of the award.  As the D.C.

Circuit explained, "the parties have necessarily bargained for the arbitrator's interpretation of the

law" and so they "may not seek relief from the courts for an alleged mistake of law."  *Am. Postal*

*Workers Union, AFL-CIO v. USPS*, 789 F.2d 1, 6 (D.C. Cir. 1986).

      Also irrelevant to the Court's review is the dollar amount of the penalty imposed by the

Roberts Award.  Even assuming USPS's calculation of $230,410 is correct, *see* Docket Entry

#16-1, ¶6, that sum is not material to USPS's bottom line.  USPS has $70 billion in annual

revenues and reports its financial status in figures rounded to the nearest million.  *See* Docket

Entry #14, at 32.  In any event, USPS cites no case law holding that a court may refuse to

confirm an otherwise legitimate award because of the dollar amount of the remedy.

      USPS claims that the Roberts Award and other awards under the CBA granting penalties

have increased the union's appetite for seeking penalties and have reduced the likelihood that the

parties will settle grievances.  *See* Docket Entry #16-1, ¶10.  USPS provides no data or

documents to support these bald assertions, and NALC denies them.  In any event, even if true,

USPS' assertion does not provide grounds for denying enforcement of the Roberts Award.  If

USPS wants to avoid penalty awards, it should not be asking this Court to bend the well-

established rules of judicial review and to strike down an entirely legitimate arbitration award.

The appropriate course for USPS would be to seek relief at the bargaining table, proposing

modifications to NALC for what USPS believes would be appropriate limitations to arbitral

remedies under the CBA.  *See Northwest Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 808 F.2d

76, 83-84 (D.C. Cir. 1987) (airline opposed to arbitrators deciding pilot safety issues "is free to

negotiate with [the pilots' union] to remove the application of safety rules from the jurisdiction of the [arbitration] board"); *see also Raytheon Co. v. Automated Bus. Sys., Inc.*, 882 F.2d 6, 12 (1st Cir. 1989) ("Parties that do wish arbitration provisions to exclude punitive damages are free to draft agreements that do so explicitly").

An even more direct way for USPS to avoid penalty awards for violating grievance settlements is to instruct its local managers to comply with grievance settlements.  In this case, for example, there would have been no penalty issued against USPS had USPS management in Kingsport, Tennessee provided the training for its supervisors by the deadline to which it had agreed.  On an even more basic level, there would have been no penalty issued against USPS if its management team in Kingsport had not triggered a union grievance by making unauthorized alterations to employee time records.

USPS concedes that it "arbitrates thousands of cases each year."  Docket Entry #16-1, ¶11.  The Court's striking down the Roberts Award would in effect throw open the courthouse doors to USPS, inviting it to seek a second opinion from the federal judiciary whenever it feels aggrieved by the outcomes of any of those thousands of arbitration decisions.  That would not only immensely burden the Court, but would irremediably undermine the finality and efficacy of the arbitration process.

## III.   PENALTY REMEDIES DO NOT REQUIRE EXPRESS CONTRACT LANGUAGE

In its attack on the Roberts Award, USPS urges the Court to adopt the position -- which it concedes this Circuit has never taken -- that a labor arbitrator may only issue a penalty award if the text of the collective bargaining agreement expressly authorizes such awards.  *See* USPS Opp. 11.  The Court should decline to do so, because the rule USPS urges is at odds with both Supreme Court and D.C. Circuit law, which makes clear that awards need not rest on express

contract language.  The Supreme Court has held that the arbitrator is "*not confined to the express provision of the contract*, as the industrial common law -- the practices of the industry and the shop -- is equally a part of the collective bargaining agreement although not expressed in it." *Warrior & Gulf*, 363 U.S. at 581-82 (emphasis added).  This Circuit has also held that the arbitrator may look beyond the contract's text, to the parties' past practice and the industrial common law of the business.  *See Madison Hotel v. Hotel & Restaurant Employees, Local 25, AFL-CIO*, 144 F.3d 855, 859 (D.C. Cir. 1998).  Because both the Supreme Court and the D.C. Circuit teach that an arbitrator's authority may come from sources beyond the text of the contract, this Court should reject the proposition that an arbitrator may only issue a penalty award if authorized to do so by the text of the contract.

In urging the Court to adopt a rule that express contract language must authorize a penalty award, USPS argues that it never consented to penalty awards and that such awards are contrary to the parties' reasonable expectations.  *See* USPS Opp. 11-12.  In fact, the substantial body of penalty awards that arbitrators have issued under the CBA and that USPS has never until now challenged, *see* Docket Entries #14-18 to #14-46, demonstrate that USPS has at least implicitly consented to such awards.  The body of Step B decisions in which USPS's authorized representatives agreed to penalties against USPS, *see* Docket Entry #14-2, ¶30 & #14-47, similarly demonstrates USPS's consent.  These awards and Step B decisions not only demonstrate USPS's consent, but also show that penalties are fully in line with the parties' expectations.

USPS's reliance on the Fourth Circuit's decision in *Island Creek Coal Co. v. Dist. 28, United Mine Workers of Am.*, 29 F.3d 126 (4th Cir. 1994) (cited at USPS Opp. 11), is unavailing.  To the extent that case stands for the proposition that only express contract language can

authorize a penalty award, the Court should decline to follow it, since, as explained above, it runs

contrary to both Supreme Court and D.C. Circuit law.  It also conflicts with the law of at least

two other circuits, the Eighth and Ninth.  *See Goss Golden West Sheet Metal, Inc. v. Sheet Metal*

*Workers Int'l Union, Local 104*, 933 F.2d 759, 764 (9th Cir. 1991) (sustaining punitive

arbitration award even absent express contract language authorizing punitive remedies); *Int'l*

*Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Northwest Airlines*, 858 F.2d 427, 429

(8th Cir. 1988) (upholding penalty payment award even though "the collective bargaining

agreement did not specifically authorize punitive damages").

Even if this Court decided to apply the Fourth Circuit's *Island Creek* decision here, the

decision would not support setting aside the Roberts Award.  In *Island Creek*, the court

suggested that even absent express contract authority, an arbitrator might be permitted to issue a

penalty award to address "willful and wanton conduct."  *Island Creek,* 29 F.3d at 130 n.6.  Here,

as noted above, Arbitrator Roberts made an unreviewable factual finding that USPS's conduct

was "clearly willful and malicious."  Docket Entry #14-18.

The other case that USPS cites for the proposition that only express contract language can

authorize a penalty award is a nearly forty-year-old, lower court case from Texas, *Int'l Union of*

*Operating Eng'rs, Local 450 v. Mid-Valley, Inc*., 347 F. Supp 1104 (S.D. Tex. 1972) (cited at

USPS Opp. 11).  Like the Fourth Circuit case, this Texas case embraces a flawed analysis that is

contrary to the law of the Supreme Court and the D.C. Circuit, as well as the Eighth and Ninth

Circuits.

Where, as here, the "industrial common law" under a collective bargaining agreement

permits penalty awards, the express language of the agreement need not do so, because, as the

Supreme Court has explained, the "industrial common law" is "equally a part of" the agreement. *Warrior & Gulf*, 363 U.S. at 581-82.

## IV.    THE ROBERTS AWARD DID NOT VIOLATE PUBLIC POLICY

USPS also fails in its attempt to show that the Roberts Award violates public policy. There is no dispute that in this Circuit, the public policy exception to the general rule requiring courts to sustain arbitration awards is "*extremely narrow*." *Am. Postal Workers Union*, 789 F.2d at 8 (emphasis in original); *see* USPS Opp. 3 (exception applies in "narrow circumstances"). In the D.C. Circuit, the exception applies when "the award itself violates established law or seeks to compel some unlawful action." *Id.*; *see, e.g., Nat'l R.R. Passenger Corp. v. Fraternal Order of Police, Local 189 Labor Comm.*, 855 F.3d 335, 340 (D.C. Cir. 2017) (cited at USPS Opp. 3-4) (exception applied when the contract language "amounted to an illegal contractual provision"). USPS's public policy argument fails here because USPS cannot establish that the monetary remedy awarded by Arbitrator Roberts was illegal or that USPS would act unlawfully by paying it.

USPS cannot even satisfy the broader articulation of the public policy exception that requires showing that an award violates an "'explicit,'" "'well defined'" and "'dominant'" public policy "'ascertained by reference to laws and legal precedents.'" *Eastern Ass'n Coal Corp. v. United Mine Workers, Dist. 17*, 531 U.S. 57, 62 (2000) (*quoting W.R. Grace & Co. v. Local Union No. 759, Int'l Union*, 461 U.S. 757, 766 (1983)). USPS bases its public policy argument on USPS's purported immunity to punitive damages. *See* USPS Opp. 4. But it cites just one case -- a lower court case from the Fourth Circuit -- that even touches on the issue of USPS's sovereign immunity in the context of labor arbitration. *See USPS v. Am. Postal Workers' Union, AFL-CIO*, 2009 WL 10677297 (D.S.C. 2009) (cited at USPS Opp. 8 n.1). The mention of sovereign immunity in that case was at best dictum, since it was unclear whether the challenged

award even contained a punitive remedy.  *See id*. at *3.  Moreover, even if the award in that case contained a punitive remedy, the sovereign immunity issue was not essential, since the Fourth Circuit rule requiring express contractual authorization for a punitive remedy would have provided the basis for the court to reject the award.  *See id*. at *3.  Dictum of dubious relevance in one lower-court, out-of-Circuit case falls far short of establishing an explicit, well-defined and dominant public policy.  In addition, as explained below, that case is simply wrong on the issue of USPS's purported sovereign immunity.

USPS's sovereign immunity argument fails because when Congress created USPS in the Postal Reorganization Act ("PRA"), it "'cast off the cloak of sovereignty" and USPS "assumed the status of a private commercial enterprise."  *Loeffler v. Frank*, 486 U.S. 549, 565 (1988) (citation omitted).  The PRA provision allowing USPS to be sued, 39 U.S.C. §401(1), constituted a waiver of sovereign immunity that, according to the Supreme Court, "should be given a liberal -- that is to say, expansive -- construction."  *USPS v. Flamingo Indus. (USA) Ltd.*, 540 U.S. 736, 741 (2004); *see also Franchise Tax Bd. v. USPS*, 467 U.S. 512, 517 (1984).  As this Court has explained, a clause allowing a government instrumentality to be sued "establishes a presumption in favor of finding a *full and complete waiver* of sovereign immunity."  *Ogugua v. Not-For-Profit Hosp.*, 217 F.Supp.3d 76, 78 (D.D.C. 2016) (emphasis added).  Only exceptional circumstances, such as those that "pose a threat of 'grave interference' with [USPS's] operation," can overcome this presumption.  *Loeffler*, 486 U.S. at 556-57.

The presumption against sovereign immunity applies with extra force here because Congress not only made USPS subject to suit in general, *see* 39 U.S.C. §401(1), but made it subject to claims by a union representing its employees.  *See* 39 U.S.C. §1208(b).  Indeed, as USPS notes, the same substantive law applicable to the union claims against private employers

11

under 29 U.S.C. §185 applies to PRA §1208(b).  *See* USPS Opp. 12 n.2.  The waiver of immunity in the collective bargaining context is thus particularly sweeping, leaving USPS as subject to suit as a private employer.  Finally, to leave no doubt about the matter, USPS has waived any claim to immunity from arbitration award penalties by not challenging, until now, a substantial body of arbitration decisions imposing such penalties, as well as by having its authorized representatives on Step B teams repeatedly agree to such penalties.  *See* Docket Entries #14-18 to #14-46; Docket Entry #14-2, ¶30 & #14-47.

 USPS argues that the expansive construction of statutory clauses allowing suit against a governmental entity extends only to things like prejudgment interest or litigation costs but not to punitive damages.  *See* USPS Opp. 6-7.  This Court squarely rejected that argument in *Conn v. Am. Red Cross*, 168 F.Supp.3d 90 (D.D.C. 2016).  In *Conn*, this Court held that the clause allowing suit against the America Red Cross in the statute that chartered the organization as a federal instrumentality made it subject to punitive damages.  *Id.* at 98-100.  The Court explained that the clause made the Red Cross subject to the same liabilities for which a private business would be liable.  *See id.* at 95.  It described the argument that the waiver applied not to punitive damages but only to a "normal incident" of litigation -- exactly the argument that USPS advances here, *see* USPS Opp. 6-7 -- to be "doubly flawed."  168 F.Supp.3d at 96.  First, the Court explained, clauses allowing suit "put a public entity's liability on par with that of a private entity in similar circumstances, and expose a public entity to the same judicial process that a private entity would face."  *Id.*  Second, a "normal incident of suit is one to 'which private businesses are amendable as a matter of course,'" and that may include punitive damages.  *Id.* (citation omitted); *see also Tesfa v. Am. Red Cross*, 2013 WL 5707849, at *2 (S.D. Ohio 2013)

(finding Red Cross subject to punitive damages based on sue-and-be-sued clause in its governing statutes).

To support its flawed view that a clause allowing suit against a government entity does not allow for punitive damages, USPS relies on a 1921 Supreme Court decision, *Missouri Pacific R. Co. v. Ault*, 256 U.S. 554 (1921) (cited at USPS Opp. 6).  But that decision is inconsistent with both the Supreme Court's more recent teaching that such a clause requires expansive interpretation, *see Flamingo*, 540 U.S. at 741; *Franchise Tax Bd.,* 467 U.S. at 517, and this Court's holding that such an expansive interpretation extends to punitive damages, *see Conn*, 168 F.Supp.3d at 96.

Moreover, neither *Ault*, nor the lower court cases that followed it, *see* USPS Opp. 5-6, involved USPS, let alone labor arbitration awards issued against USPS under the CBA.  In the one decision that we know of in which USPS tried to rely on *Ault* to avoid penalties, *see Pennsylvania, Dep't of Environmental Resources v. USPS*, 13 F.3d 62 (3d Cir. 1993), the Court resoundingly rejected USPS' position:  "[c]ontrary to the Postal Service's argument, however, we believe that *Ault* concerned the sovereign immunity of the government itself, not the sovereign immunity of a federal instrumentality that has been 'launched … into the commercial world.'" *Id*. at 66 (quoting *Franchise Tax Bd.*, 467 U.S. at 520).  The Third Circuit explained that whether USPS enjoyed immunity from penalties depended on the expansive waiver test set out in *Loeffler* and *Franchise Tax Board*, 13 F.3d at 67, and it concluded that USPS failed to rebut the presumption that the waiver of immunity applied to penalties, *see id*.

USPS next cites the statute making the federal government immune from punitive damages in tort suits, 28 U.S.C. §2674, and claims that that immunity should serve as a "guide" here.  USPS Opp. 7.  That argument fails because, unlike the federal government in general,

USPS has "'cast off the cloak of sovereignty" and "assumed the status of a private commercial enterprise." *Loeffler*, 486 U.S. at 565 (citation omitted).  The argument also fails because, as explained above, the PRA's clauses making USPS subject to suit in general and subject to suit by its unions in particular create a strong presumption against immunity.

Finally, the argument fails because potential penalties in an arbitration award pose nothing like the risk of punitive damages awarded by a jury in a tort suit.  Jurors are often wild cards, laypeople chosen at random to hear a single case and who have no ongoing connection to the process.  As the Supreme Court has noted, juries can be "unpredictable." *Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 270 (1981) (cited at USPS Opp. 7).  Their awareness that a governmental entity is a deep pocket "may have a prejudicial impact on the jury, in effect encouraging it to impose a sizable award." *Id.*  Another case USPS cites points out that juries may award "potentially astronomical damages." *Merk v. Jewel Food Stores*, 734 F. Supp. 330, 332 (N.D. Ill. 1990), *rev'd on other grounds*, 945 F.2d 889 (7th Cir. 1991) (cited by USPS at 13-14).  By contrast, arbitrators under the CBA are seasoned labor relations professionals, selected by both parties for their experience, skill and temperament, and incentivized by the prospect of continued employment to render fair and reasonable decisions.  *See* Docket Entry #14-2, ¶9.  For all those reasons, the statute immunizing the federal government from punitive damages in tort cases is irrelevant here.

USPS also asserts that arbitration awards that impose penalties on USPS violate public policy because they "divert funds" that USPS would otherwise use for mail delivery.  *See* USPS Opp. 9.  That assertion fails to show that penalty arbitration awards fall within the narrow public policy exception because a public policy exception must be "'ascertained by reference to laws and legal precedents,'" *Eastern*, 531 U.S. at 62, not simplistic economic truisms.  Indeed, the

self-evident assertion that USPS might otherwise use the money elsewhere could be applied to *any* liability, not just penalty arbitration awards, but no one contends that USPS should be free of all liabilities.

To make a case that the PRA did not waive its sovereign immunity to a potentially costly liability, USPS would have to demonstrate that the liability posed "a threat of 'grave interference' with [USPS's] operation." *Loeffler*, 486 U.S. at 556-57.  USPS makes no such showing in connection with the Roberts Award in particular or with arbitration awards imposing penalties in general.  Indeed, USPS asserts that NALC "has identified only a small number of cases involving monetary sanctions and not one of the awards cited by NALC involved more than $5,000.  In fact, most amounted to less than $500."  USPS Opp. 22.  Such awards pose no threat of "grave interference" to a $70 billion postal operation.  Their slight financial impact could not conceivably require a reduction in postal services, an increase in the cost of postage, or an appropriation by Congress.  *Cf. Baker v. Runyon*, 114 F.3d 668, 672 (7th Cir. 1997) (quoted by USPS Opp. 9).

The other cases USPS cites for its public policy argument do not concern review of a labor arbitration award, and thus cannot establish an explicit, well-defined and dominant policy against labor arbitration awards imposing a penalty on USPS.  Certain of these cases denied punitive damage claims against USPS not because of its purported sovereign immunity, but because the substantive law that provided the basis for the lawsuit precluded punitive damages against USPS.  *See Flamingo*, 540 U.S. at 744 (cited by USPS Opp. Br. 4-5) (denying treble damages against USPS under the Sherman Act not because of sovereign immunity, but because USPS is not a "person" subject to suit within the meaning of the Sherman Act); *Baker*, 114 F.3d at 671 (cited at USPS Opp. 5) ("the substantive law relied upon by [plaintiff] in the instant case,

Title VII, provides that punitive damages are not available against governmental entities");
*Robinson v. Runyon*, 149 F.3d 507, 516 (6th Cir. 1998) (cited at USPS Opp. 5) (holding USPS
exempt from punitive damages in Title VII case because the statute exempts government
agencies.)  Because those cases turn on the underlying statutes, and not USPS's purported
sovereign immunity, they provide no support for USPS's argument.  *See Flamingo*, 540 U.S. at
744 ("[a]n absence of immunity does not result in liability if the substantive law in question is
not intended to reach the federal entity.")

Finally, USPS cites two cases in which an employee sued a union for breach of the duty
of fair representation.  In the first, *Bowen v. USPS*, 470 F. Supp. 1127 (W.D. Va. 1979), *rev'd in
part, aff'd in part*, 642 F.2d 79 (4th Cir. 1981), *rev'd*, 459 U.S. 212 (1983) (cited at USPS Opp. 8
n.1), the district court struck down a punitive damages jury verdict against USPS.  The second,
*McLean v. USPS*, 544 F. Supp. 821, 828 (W.D. Pa. 1982) (cited at USPS Opp. 8 n.1), followed
the *Bowen* district court decision.  These two dated, lower court decisions from outside of this
Circuit, one of which was reversed on appeal, fail to establish an explicit, well-defined and
dominant public policy against arbitration awards imposing penalty remedies.  First, the cases do
not concern arbitration awards.  In particular, they do not concern arbitration awards issued
under a collective bargaining agreement where the agreement's "industrial common law" permits
penalties.  *See* Docket Entries #14-18 to #14-46; Docket Entry #14-2, ¶30 & #14-47.  *Bowen* and
*McLean* also fall short of establishing an explicit, well-defined and dominant public policy
against penalty arbitration awards because such arbitration awards do not pose the risks to USPS
that jury verdicts may.

For these reasons, USPS's public policy defense fails.

16

## CONCLUSION

For the reasons explained above and in NALC's opening brief, the Court should grant

NALC's motion to confirm the Roberts Award.

Dated: March 13, 2020

Respectfully submitted,

/s/ *Peter D. DeChiara*

Peter D. DeChiara (admitted *pro hac vice*)
Judd E. Cohen (admitted *pro hac vice*)
COHEN, WEISS AND SIMON LLP
900 Third Avenue
New York, New York 10022-4869
Tel: (212) 563-4100

/s/ *Lucas R. Aubrey*

Victoria L. Bor (D.C. Bar. No. 288852)
Lucas R. Aubrey (D.C. Bar No. 982849)
SHERMAN DUNN, P.C.
900 Seventh Street, N.W.
Suite 1000
Washington, D.C.  20001
(202) 785-9300

*Attorneys for National Association of Letter Carriers,*
*AFL-CIO*