UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


UNITED STATES POSTAL SERVICE,   .
                                .
            Plaintiff,          .   CA No. 19-3685 (TSC)
                                .
     v.                         .
                                .
NATIONAL ASSOCIATION OF         .   Washington, D.C.
LETTER CARRIERS, AFL-CIO,       .   Monday, July 26, 2021
                                .   2:06 p.m.
            Defendant.          .
. . . . . . . . . . . . . . .   .



TRANSCRIPT OF BENCH RULING
BEFORE THE HONORABLE TANYA S. CHUTKAN
UNITED STATES DISTRICT JUDGE


<u>APPEARANCES</u>:

For the Plaintiff:        BENTON G. PETERSON, AUSA
                          U.S. Attorney's Office
                          555 Fourth Street NW
                          Washington, DC 20530
                          (202) 252-2599


For the Defendant:        VICTORIA L. BOR, ESQ.
                          Sherman, Dunn, Cohen, Leifer & Yellig
                          900 Seventh Street NW
                          Suite 1000
                          Washington, DC 20001
                          (202) 785-9300


Court Reporter:           BRYAN A. WAYNE, RPR, CRR
                          U.S. Courthouse, Room 4704-A
                          333 Constitution Avenue NW
                          Washington, DC 20001
                          (202) 354-3186



Proceedings reported by stenotype shorthand.
Transcript produced by computer-aided transcription.

1        P R O C E E D I N G S

2              (Via Videoconference)

3           THE DEPUTY CLERK:  Your Honor, we have civil action

4     19-3685, U.S. Postal Service versus the National Association

5     of Letter Carriers, AFL-CIO.  We have Mr. Benton Peterson

6     representing the plaintiff, and we have Ms. Victoria Bor and

7     a Mr. Terence Flynn representing the defendant, all appearing

8     by video.  Well, Mr. Peterson is appearing by telephone.

9           THE COURT:  All right.  I can't see anybody but me.

10    Who do we have?  Ms. Bor?

11          MS. BOR:  Good afternoon, Your Honor.  I'm

12    representing the National Association of Letter Carriers.

13    Others were unavailable this afternoon.  I'm local counsel,

14    and I'm here on behalf of the union.

15          THE COURT:  All right.  Thank you.

16       And is that you, Mr. Peterson?

17          MR. PETERSON:  Good afternoon, Your Honor.

18    This is Benton Peterson for the U.S. Postal Service.

19          THE COURT:  Good afternoon.

20       Is that Mr. Flynn I'm seeing on the camera?

21          MR. FLYNN:  It is.  I'm with the United States

22    Postal Service.

23          THE COURT:  Good afternoon to you all.

24       We are here today because I am going to rule from the

25    bench on a pending motion in this case.

1    The USPS has moved to vacate an August 2019 action award

2  issued by Arbitrator Lawrence Roberts, and that's in ECF No. 2.

3  In response, the National Letter Carriers Association, which

4  I'll refer to as "the union," has filed a motion to confirm the

5  arbitration award.

6    For the reasons I will now discuss, USPS's motion to vacate

7  the arbitration award will be denied, and the union's motion to

8  confirm the award will be granted.  My reasoning is as follows:

9    In 1970, Congress passed the Postal Reorganization Act,

10  the PRA, to establish a postal service that ran more like a

11  commercial business than its predecessor.  As a result of the

12  PRA, USPS now operates as a self-sustaining system whose revenue

13  comes from the sale of its products as opposed to tax revenue.

14  The PRA also gives USPS the power to sue and be sued in its name

15  and provides for collective bargaining.

16    In 1971, USPS entered into a collective bargaining

17  agreement with the National Association of Letter Carriers,

18  the union, a national labor union that serves as the collective

19  bargaining representative of city letter carriers employed by

20  USPS.  Every few years, the term of the collective bargaining

21  agreement expires, and the parties negotiate a new agreement.

22  The agreement at issue in this case was entered into in 2016.

23    As relevant to this case, Article 15 of the latest

24  collective bargaining agreement, which I'll refer to as "the

25  CBA," contains a procedure for the resolution of grievances.

1    In what is referred to as Step A, the parties are granted

2    authority to settle a grievance informally.  If the parties

3    cannot reach a settlement informally, the union can appeal

4    to Step B.  At Step B, a two-person team consisting of a

5    representative from each party, called the Dispute Resolution

6    Team, has the power to solve the grievance.  For the Dispute

7    Resolution Team to reach an agreement, both representatives

8    must agree.

9        If both members of the Dispute Resolution Team fail

10   to reach an agreement, they can declare an impasse, at which

11   point the union may submit to arbitration.

12       If the union pursues this step, the CBA provides that

13   "all decisions of an arbitrator will be final and binding."

14   And I'm quoting from the Collective Bargaining Agreement,

15   Article 15 § 4(A)(6).

16       The grievances in this case arise from a failure of

17   management at USPS's Kingsport, Tennessee, facility to abide

18   by timekeeping requirements.  In short, if a supervisor makes

19   a modification to an employee's timekeeping record, the

20   supervisor must properly document the modification on certain

21   designated forms.

22       On June 6, 2018, a Dispute Resolution Team found that the

23   union's grievance had merit and that management at the Kingsport

24   facility was altering time records without complying with the

25   requisite procedures.  The Dispute Resolution Team ordered all

management at the Kingsport facility to be immediately retrained on the use of the USPS's timekeeping system and required management to submit a copy of proof that the training took place.

On August 7, 2018, the union filed another grievance for similar violations.  A supervisor at the Kingsport facility agreed to settle about a week later on August 14, 2018, and committed to making sure that the training was completed by August 31, 2018.

On November 27, 2018, a Dispute Resolution Team found that management at the Kingsport facility did not comply with either the June 6th or August 15th settlements because USPS did not provide the union with documentation certifying that the trainings had been completed.  It thus ordered management to provide the union proof that it had trained all the supervisors within seven days or to face demands to escalating remedies.

On December 20, 2018, the union initiated a grievance claiming that USPS had violated the November 27, 2018, Dispute Resolution Team decision.  After the parties failed to settle the grievance at Step A, on February 8, 2019, a Dispute Resolution Team issued a finding that USPS had not complied with the November 27th decision.

However, the USPS representative did not agree to grant the damages the union asked for, which resulted in an impasse on the remedy question.  The union then appealed the remedy

issue to arbitration in accordance with the arbitration parameters that were set forth in the CBA.

Arbitration occurred on June 14th before Arbitrator Lawrence Roberts.  Arbitrator Roberts, in finding for the union, determined that by "simply ignoring" prior cease and desist orders, USPS had acted in a manner that was "clearly willful and malicious."

He explained that the November 27, 2018, Step B decision contained a "very clear mandate" that USPS provide proof of the supervisors' training within USPS, to make a payment to letter carriers for its failure to train supervisors, and to make a payment for its failure to provide requested documentation to the union by the deadline.

Therefore, Arbitrator Roberts ordered USPS, among other things, to pay letter carriers for USPS's failure to train supervisors at the Kingsport facility by the deadline, and to make another payment for its failure to provide the requested documentation to the union by the deadline.  The total penalty assessed by the arbitrator was $243,410, according to USPS.

Neither party disputes that the award issued by Arbitrator Roberts was punitive in nature.

On December 10, 2019, USPS filed its complaint in this case along with a motion to vacate the Roberts Award on the theory that Arbitrator Roberts did not have the authority to order punitive damages.  On February 14, 2020, the union filed

a cross-motion, asking the Court to confirm the arbitration award.  Both motions have been fully briefed and are, therefore, ripe for review.

Now a bit about the legal standard under which I'm operating.  The a federal court's review of an arbitration award is extremely deferential to the arbitrator.  It does not require perfection in arbitration awards, but rather, dictates that even if an arbitrator makes mistakes in fact or law, a court may not disturb an award so long as the arbitrator acted within the bounds of their authority as defined in the collective bargaining agreement.

And I cite *Paperworks Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38, which held that the Court's role is to ensure that the arbitrator was "even arguably construing or applying the contract and acting within the scope of his authority" and did not ignore the plain language of the contract.

So there are two questions that I need to address in this case.  The first is whether the doctrine of sovereign immunity shields the USPS from liability for punitive damages, and the second is whether the arbitrator exceeded his authority by awarding a remedy that was not expressly defined in the CBA. The answer, as I see it, to both questions is no.

With regard to sovereign immunity, the government contends that because USPS is an independent establishment of the executive branch, it cannot be held liable for punitive damages

due to sovereign immunity.  The union, on the other hand, argues
that Congress waived sovereign immunity as to USPS in the PRA
and, therefore, USPS is subject to punitive damages when
appropriate.  I find that the union has the more convincing
argument here.

Absent a waiver of sovereign immunity, the federal
government is normally immune from suit.  However, Congress
has waived sovereign immunity for certain federal entities by
including a provision that the entity can "sue and be sued" in
its enabling legislation.  And I'm citing to *Loeffler v. Frank*,
486 U.S. 549, 554.

If that language is included, then it is presumed that
sovereign immunity is waived unless it can be shown that the
type of suit is either (1) not consistent with the statutory
or constitutional scheme, (2) that a restriction of general
authority is necessary to avoid grave interference with
government functions, or (3) for other reasons, it was plainly
Congress's purpose to use the clause in a narrow sense.

In USPS's enabling legislation, Congress stated, in no
uncertain terms, that USPS "can sue and be sued in its official
name."  And I'm citing from 39 U.S.C. § 401(1).  In fact, in
*Loeffler,* the Supreme Court held that the language in the PRA
gave the USPS the "status of a private commercial enterprise"
and that Congress waived any otherwise existing immunity of
USPS from interest awards.

1   This court understands the Supreme Court's holdings to mean

2   that unless "one of a limited set of exceptions applies ... an

3   agency or other federal entity with a sue-and-be-sued clause

4   cannot escape the liability that a private enterprise would

5   face under similar circumstance."  And I'm quoting from *Conn v.*

6   *American National Red Cross*, 168 F.Supp.3d 90, 95, which quotes

7   *FDIC v. Meyer*, 510 U.S. 471, 482.

8   Thus, I have little difficulty concluding that Congress

9   intended to waive sovereign immunity as to USPS by virtue of

10  the PRA.  None of the enumerated exceptions that are listed by

11  the Supreme Court in *Loeffler* apply in this case:

12  Subjecting USPS to punitive damages is not inconsistent

13  with the statutory scheme.  The language of the PRA gave USPS

14  the status of a commercial business, which is consistent with

15  Congress's intent that USPS operate as one.  A commercial

16  business is liable for punitive damages when appropriate.

17  Compliance with the award given by the arbitrator will

18  also not materially interfere with government functions.  USPS

19  had $70 billion in revenue last year.  Even if the punitive

20  damages award here are the amount that the government alleges

21  - $230,640 - it is not an amount that would materially affect

22  USPS's operations.

23  Finally, the third exception does not apply.  Nothing in

24  the PRA or its legislative history clearly shows that Congress

25  intended the sue-and-be-sued language to be construed narrowly.

Interpreting the PRA's sue-and-be-sued clause narrowly would contravene Congress's stated intent that USPS be run as a commercial enterprise.

Accordingly, I find that sovereign immunity does not shield USPS from liability for punitive damages where appropriate.

Now, USPS argues that the arbitrator exceeded his authority because punitive damages are not explicitly set forth in the language of the CBA.  The union counters that explicit language specifying the availability of punitive damages is not required.  And, again, I find that here the union has the better argument.

The CBA here states that "all decisions of an arbitrator will be final and binding" and that "all decisions of an arbitrator shall be limited to the terms and provisions of this Agreement, and in no event may the terms and provisions of this Agreement be altered, amended, or modified by an arbitrator."  I'm quoting from the CBA Article 15 § 4(6).  It is silent on the remedies available.

But the Supreme Court has made it clear that "the labor arbitrator's source of law is not confined to the express provisions of the contract, as the industrial common law - the practices of the industry and the shop - is equally part of the collective bargaining agreement although not expressed in it."  And I quote from *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 581-82.

This is because "the labor arbitrator is usually chosen

1    because of the parties' confidence in his knowledge of the

2    common law of the shop and their trust in his personal judgment

3    to bring to bear considerations which are not expressed on the

4    contract as criteria for judgment."  And again I'm citing from

5    *United Steelworkers*.

6         The D.C. Circuit has made it equally clear that an

7    arbitrator may look to the "parties' past practice ... [and] the

8    structure of the contract as a whole [may] be properly considered

9    by the arbitrator in interpreting the contract and formulating

10   the award."  And I'm quoting and citing *Madison Hotel v. Hotel*

11   *and Restaurant Employees, Local 25, AFL-CIO*, 144 F.3d 855, 859.

12        While the D.C. Circuit has not specifically opined on

13   whether punitive damages are available as a remedy when not

14   expressly set forth in a CBA, other circuits have, and there

15   is some disagreement.

16        For example, the Eighth Circuit held that an award for

17   punitive damages was appropriate without express language

18   because the industry practice was to award punitive damages.

19   And I cite *Int'l Association of Machinists & Aerospace Workers,*

20   *AFL-CIO v. Northwest Airlines*, 858 F.2d 427.

21        The Ninth Circuit upheld a punitive damages award in

22   *Goss Golden West Sheet Metal, Inc. v. Sheet Metal Workers*

23   *Int'l Union, Local 104,* where the language of the collective

24   bargaining agreement stated that the "arbitrator may grant

25   any remedy or relief which is just and equitable and within

the terms of the agreement of the parties," language which
is slightly more broad than the CBA in this case.  And that
is 933 F.2d 749, 764.

In contrast, the Fourth Circuit has held that "absent
an express provision in the collective bargaining agreement ...
an arbitrator [may not] impose a punitive award or punitive
damages."  I'm citing *Island Creek Coal Co. v. District 28,*
*United Mine Workers of America*, 29 F.3d 126, 129.

This court will follow the lead of the United States
Supreme Court and the D.C. Circuit, which have both held
that arbitrators may look beyond the explicit text of the
agreement in fashioning an appropriate remedy.

For one, the CBA here is silent as to the remedies
available to the arbitrator, and surely an arbitrator is
permitted to order a remedy that is not expressly detailed
in the CBA when the CBA doesn't discuss any remedies.

In any event, a federal court is not authorized to
override an arbitrator's interpretation of a CBA if it
disagrees with the arbitrator's approach or would have
reached a different conclusion.  An arbitral award must
be upheld if the arbitrator's decision is arguably applying
the CBA.

To that end, Arbitrator Roberts did not exceed his
authority in ordering USPS to pay punitive damages.

As I discussed previously, rulings from the Supreme

Court and the D.C. Circuit generally permit an arbitrator to go
beyond the bounds of the CBA in fashioning a remedy, allowing
him to look to industry common law and practice between the
parties.

Citing arbitral precedent, Arbitrator Roberts noted that
"it is generally accepted in labor arbitration that a damage
award arising from a violation of the collective bargaining
agreement should be limited to the amount necessary to make the
injured employee whole."  I'm quoting from ECF No. 14-18 at 18.

However, Arbitrator Roberts reasoned that this does not
mean that punitive awards are always prohibited.  He then
expressed the opinion that punitive damages were appropriate
here given that a straightforward "cease and desist order cannot
be simply ignored, as it was in this case."  Thus, he concluded
that USPS's failure to abide by the Step B settlements reached
the level of "willful and malicious and clearly represents bad
faith bargaining."

Even if the Court disagreed with this conclusion, it
would be in no position to disturb the Roberts Award.  The
arbitrator's analysis is consistent with arbitral precedent
and past practice between the parties in which punitive damages
were ordered for willful, malicious conduct.

Indeed, Arbitrator Roberts' approach is consistent with
the past practice of the parties.  An extensive body of prior
arbitration cases between the parties demonstrates a practice

1   of the USPS paying a penalty for its noncompliance with

2   grievance resolutions under the CBA, and those are set forth

3   in ECF 14, Exhibits EE to RR.

4       Therefore, Arbitrator Roberts' approach is consistent with

5   D.C. Circuit precedent and, thus, will not be disturbed by this

6   court.  The Court, therefore, finds that Arbitrator Roberts did

7   not overstep the bounds of his authority in ordering USPS to

8   pay punitive damages.

9       Accordingly, USPS's motion to vacate Arbitrator Roberts'

10  August 2019 award is denied, and the union's cross-motion to

11  confirm the award is granted.  The case will be dismissed with

12  prejudice, and I will issue an order on the docket shortly.

13      Is there anything else that we need to address today,

14  Ms. Bor?

15          MS. BOR:  No, Your Honor.  Thank you.

16          THE COURT:  Mr. Peterson?

17          MR. PETERSON:  No, Your Honor.  Thank you.

18          THE COURT:  Mr. Flynn?

19          MR. FLYNN:  No, Your Honor.  Thank you.

20          THE COURT:  All right.  Thank you all.  And I will

21  say that I thought that the briefs in this case were very good

22  and helpful to the Court.

23          MR. PETERSON:  Thank you, Your Honor.

24          MS. BOR:  Thank you, Your Honor.

25          (Proceedings adjourned at 2:30 p.m.)

CERTIFICATE

I, BRYAN A. WAYNE, Official Court Reporter, certify that the foregoing pages are a correct transcript from the record of proceedings in the above-entitled matter.

*/s/ Bryan A. Wayne*
Bryan A. Wayne